235 P.3d 325

STATE of Hawai'i, Respondent/Plaintiff–Appellant,

v.

Tanya RAPOZO, aka Tanya Rapoza, Petitioner/Defendant–Appellee.

No. 29215.

Supreme Court of Hawai'i.

July 29, 2010.

Brian R. Vincent, Deputy Prosecuting Attorney, for respondent/plaintiff-appellant.

Alvin K. Nishimura, Honolulu, for petitioner/defendant-appellee.

MOON, C.J., NAKAYAMA, and RECKTENWALD, JJ.; and ACOBA, J., dissenting, with whom DUFFY, J., joins.

Opinion of the Court by
RECKTENWALD, J.

In the early morning of September 19, 2006, Petitioner/Defendant–Appellee Tanya Rapozo, a.k.a. Tanya Rapoza was stopped by police for driving erratically on Ala Wai Boulevard in Waikiki. She was subsequently placed under arrest and transported to the Honolulu Police Department's main station, where she was searched. During that search, a police matron discovered a .38 caliber bullet inside Rapozo's brassiere. The bullet was later tested and determined to be operable.

Rapozo, who was a convicted felon, was charged with Ownership or Possession Prohibited of Any Firearm or Ammunition By a Person Convicted of Certain Crimes in violation of Hawai'i Revised Statutes (HRS) § 134–7(b) and (h) (Supp.2007), cited *infra.* Rapozo filed a motion to dismiss that charge as a de minimis infraction within the meaning of HRS § 702–236 (1993).[1] In support of her motion, Rapozo submitted a declaration of counsel which asserted that her explanation for possessing the bullet was that "she was going to have it made into a charm for a bracelet." The Circuit Court of the First Circuit granted the motion.[2] However, the Intermediate Court of Appeals vacated the dismissal, and Rapozo timely filed an application for a writ of certiorari with this court.

In her application, Rapozo raises the following question:

Whether the ICA gravely erred in concluding that the trial court abused its discretion in dismissing the case under H.R.S. 702–236 the de minimus statute.

We have recognized previously that it is the defendant's burden to place "all" of the relevant attendant circumstances before the trial court, and to establish why dismissal is warranted in light of those circumstances. *See, e.g., State v. Park,* 55 Haw. 610, 616, 525 P.2d 586, 591 (1974); *State v. Viernes,* 92 Hawai'i 130, 134, 988 P.2d 195, 199 (1999) (quoting *State v. Vance,* 61 Haw. 291, 307, 602 P.2d 933, 944 (1979)). The only evidence offered by Rapozo in support of her motion was the declaration of her counsel, which omitted many of the relevant attendant circumstances. We therefore conclude that Rapozo failed to carry her burden of establishing that her conduct was de minimis within the meaning of HRS § 702–236. However, as we set forth below, we do not preclude the possibility that Rapozo could carry that burden at a later stage of the proceedings in the event a more fully developed record supports dismissal. *See infra* note 16.

Accordingly, we affirm the judgment of the ICA.

## I. Background

### A. Factual and Procedural Background

On April 24, 2007, Rapozo was charged in an indictment with Ownership or Possession Prohibited of Any Firearm or Ammunition By a Person Convicted of Certain Crimes in

---

1. HRS § 702–236 (1993) provides:
 **De minimis infractions.** (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:
 (a) Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense; or
 (b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
 (c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.
 (2) The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

2. The Honorable Michael A. Town presided.

violation of HRS § 134–7(b) and (h) [3] (Count I), and driving without a license in violation of HRS § 286–102 (Count II).

On February 26, 2008, Rapozo filed a motion to dismiss Count I of the indictment as de minimis within the meaning of HRS § 702–236. Rapozo also submitted a Declaration of Counsel (declaration) and a memorandum in support of the motion. Rapozo's counsel declared, in relevant part, as follows:

. . .

2. The allegations in this matter are as follows:

 a) At approximately 1:14 a.m. on September 19, 2006, Ms. Rapozo was driving a white pickup truck on Ala Wai Boulevard in the City and County of Honolulu, State of Hawaii, when she was pulled over by Honolulu police officer Jason Pistor for driving erratically.

 b) After making the stop, Officer Pistor examined the VIN number on the pickup truck and radioed that number to HPD dispatcher.

 c) Dispatch found that the VIN number belong [sic] to another vehicle and notified Officer Pistor of that fact.

 d) Officer Pistor then placed the defendant under arrest for driving under the influence and without a valid driver's license and took her to the Central Processing Division at the main station.

3. At approximately 2:30 a.m. Ms. Rapozo was given a pat down search by Police Matron Laura Chin [sic] who felt something hard in defendant's brassrere [sic].

4. Matron Chun escorted Ms. Rapozo into the holding cell to conduct a more extensive search and found a single .38 caliber bullet in the left cup of defendant's bra.

5. Ms. Rapozo's explanation for having the bullet in her possession was that she was going to have it made into a charm for a bracelet.

6. No gun was found by either Matron Chun or police officer Pistor, nor was any other ammunition, drugs or other contraband found in defendant's possession or control.

. . .

Rapozo argued that "under the relevant circumstances, the finding of a single 38 caliber bullet in her bra did not actually cause or threaten the harm sought to be prevented or did so only to the extent too trivial to warrant the condemnation of conviction."

On March 3, 2008, the State filed a memorandum in opposition to Rapozo's motion to dismiss. In its memorandum, the State recited facts which were similar to those recited by Rapozo's counsel, but with some additional detail. The State's memorandum asserted that, at the time of the traffic stop, Rapozo's "eyes were red and bloodshot," she "made statements and questions that did not make any sense," and "her behavior was bizarre to police officers." The State's memorandum also stated that "[Rapozo] had previously been convicted of Unauthorized Control of Propelled Vehicle, Promoting a Dangerous Drug in the Third Degree and Theft in the Second Degree."

The State argued that the "direct and unambiguous language" of HRS § 134–7(b) clearly prohibits a felon from owning, possessing or controlling any firearm or ammunition. The State further argued that applying the de minimis provision to a single bullet, as Rapozo advocated, would render the statute's prohibition against the possession of "any" ammunition superfluous.

---

**3.** At the time of the charged offense, HRS § 134–7 (Supp.2007) provided, in relevant part:

**Ownership or possession prohibited, when; penalty.**

. . .

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

. . .

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor.

Moreover, the State noted that, at the time the bullet was recovered, Rapozo was in custody in the main police station holding facility, and Rapozo made no effort to turn the bullet over to police officers. The State argued that, although Rapozo was not found in possession of a gun or other firing device, the possession of a single bullet was not de minimis because "[a] bullet can be fired from a simple device that can be obtained/made by any one. For example, any home made gun such as a 'zip gun,' typically made by prisoners can fire a 'bullet' and cause the same harm."

The circuit court held a hearing on May 7, 2008. At the start of the hearing, the circuit court asked Rapozo's counsel whether he wished to argue the motion, and stated, "I've read over the motions. I'll take judicial notice." Neither the State nor Rapozo's counsel voiced any objection.

Rapozo's counsel argued the motion, but Rapozo did not testify at the hearing, nor did she present any other evidence. Rapozo's counsel argued that "the question raised by this motion [is] . . . whether or not a possession of a single bullet in her bra, without the ability to fire it, violates the purpose of HRS [§ ] 134–7(b)." Rapozo's counsel further argued that:

> Under the facts of this case, a single bullet hidden in the Defendant's bra that could not be used to harm anyone doesn't really violate the purpose of the statute; nor does it create the danger that the statute was designed to prevent.
>
> I think the Court should look at the attendant circumstances of this case and not fantasize about the presence of a gun, if the State intends to muddy the water by raising this specter of an imaginary Zip gun. There was no .38 caliber pistol, no Zip gun, or any other mechanism present at the time capable of firing that bullet.

After Rapozo's counsel concluded his argument, the circuit court addressed the Deputy Prosecuting Attorney (DPA) and stated:

> Miss Ikeda, I also thoroughly understand what you said [in the State's memorandum in opposition to Rapozo's motion]. A bullet is a bullet. She's a felon, and that a felon should not get anywhere near a

bullet or a piece of ammunition. It could have been smuggled into the facility and then you put a picture of a so-called Zip gun or whatever.

The circuit court then questioned the DPA concerning two photographs of homemade zip guns that were attached to the State's memorandum. The circuit court then asked the DPA whether she wished to add or emphasize anything for the record. The DPA declined, stating "[n]o, Your Honor. I believe it's all stated in my motion."

The circuit court did not rule at the hearing, and took the matter under advisement. On June 3, 2008, the circuit court filed its Order Granting Defendant's Motion to Dismiss Count I of Felony Indictment with Prejudice, which contained its Findings of Fact and Conclusions of Law (FOF/COL).

■ The circuit court's relevant FOFs/COLs were as follows:

### FINDINGS OF FACT

1. At approximately 1:14 a.m. on September 19, 2006, Tanaya [sic] Rapozo was driving a white pickup truck on Ala Wai Boulevard in the City and County of Honolulu, State of Hawaii, when she was pulled over by Honolulu Police Officer Jason Pistor for driving erratically.

 . . .

3. Officer Pistor then placed the defendant under arrest for driving under the influence and without a driver's license and took her to the Central Processing Desk of the main police station.

4. At approximately 2:30 a.m. Ms. Rapozo was given a pat down search by police matron Laura Chun who felt something hard in defendant's brassiere.

5. Matron Chun escorted Ms. Rapozo into the holding cell to conduct a more extensive preincarceration search and found a single .38 caliber operable bullet in the left cup of defendant's bra.

6. Ms. Rapozo's explanation for possessing the bullet was that she was going to have it made into a charm for a bracelet.

7. No gun was found by either Matron Chun or police officer Pistor, nor was any other ammunition, drugs or other contraband found in defendant's possession or control.

8. Defendant, who has previously been convicted of Unauthorized Control of Propelled Vehicle, Promoting Dangerous Drugs in the Second Degree and Theft in the Second Degree and is prohibited from possessing or controlling a firearm and/or ammunition, was arrested and charged under HRS § 134–7(b), a class B felony.[4]

## CONCLUSIONS OF LAW

1. The purpose of HRS § 134–7(b) and (h) is to protect the public from criminal activity involving the use of firearms by felons convicted of certain crimes along with people under judicial restraint by prohibiting these individuals from possessing or controlling firearms and/or ammunition. In this case, the use of firearms and/or ammunition is not a relevant factor in causing the situation that led to defendant's arrest.

2. Under HRS § 134–7(b) the possession of ammunition in any amount is a violation. (*See, State v. Pinero*, 70 Haw. [509], 778 P.2d 704 (1989)). However, the law does recognize that under certain circumstances the infraction is so small as to make the penalty for the violation of a particular statute unreasonable. *HRS Section 702–236.*

3. HRS Section 702–236 provides that the Court may dismiss a prosecution if, considering all of the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too *trivial* to warrant the condemnation of conviction. (*See, State v. Viernes*, 92 [Hawai'i] 130, 988 P.2d 185[sic] (1999); *State v. Charmichael* [*Carmichael*], 99 [Hawai'i] 75, 80, 53 P.3d 214, 219 (2002)).

4. Under the facts of this case, a single bullet hidden from plain view in defendant's bra, without the capacity to fire it and which could not be used to harm anyone, does not violate the purpose of H.R.S. § 134–7(b); nor does it create the danger the statute was designed to prevent.

5. Where an infraction is so infinitesimal that the possibility of the harm sought to be prevented by a statute is minuscule, the violation may constitute a "de minimus infraction" within the meaning of H.R.S. § 702–236. *State v. Viernes*, 92 Hawaii [130], 988 P.2d 185[sic] (1999). In that event the Court in its sound discretion may dismiss the prosecution brought against the defendant for the statutory violation. *Id.*

6. Clearly, the defendant has met her burden of showing that the de minimus statute applies. Therefore, in the interest of justice, this Court chooses to exercise the discretion provided by H.R.S. § 702–236 and the authorities cited herein, to dismiss Count I of the indictment with prejudice.

(Emphasis in original).

## B. ICA Appeal

In its October 29, 2008 Opening Brief to the ICA, the State raised the following three points of error: 1) the circuit court erred in entering FOFs 5 and 6; 2) the circuit court erred in entering COLs 1, 4 and 6; and 3) the circuit court abused its discretion in

---

4. Aside from FOFs 5 and 6, the circuit court's FOFs were unchallenged by the State, and are therefore binding on this court. *See Kelly v. 1250 Oceanside Partners*, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006). In its Opening Brief to the ICA, the State challenged FOFs 5 and 6, insofar as they characterized the item in Rapozo's possession "as a 'bullet,' rather than as a bullet cartridge or round or simply ammunition" because "[a] bullet does not contain explosives but is the solid projectile portion of ammunition that is propelled from the firearm." In its memorandum opinion, the ICA rejected the State's contentions as unfounded because the circuit court characterized the bullet as "operable," and it was therefore "sufficient to satisfy the meaning of ammunition under HRS § 134–7(b)." Given the ICA's resolution of that issue, it does not appear that there is any further dispute that the bullet in Rapozo's possession was "ammunition" within the meaning of HRS § 134–7(b).

granting Rapozo's motion to dismiss Count I as de minimis.[5]

Specifically, the State challenged FOFs 5 and 6 insofar as they characterized the item in Rapozo's possession as a "bullet," because "[a] bullet does not contain explosives but is the solid projectile portion of ammunition that is propelled from the firearm."

The State also argued that the circuit court erred in COL 1 because, the State argued, the protection of law enforcement officers, correctional officers, jail staff and detainees was also an important purpose of HRS § 134–7. The State further argued that Rapozo had passively attempted to bring "live" ammunition into the police station holding facility, where she or another detainee could have used a "home made" gun or found some other means of discharging the bullet, and that she could have been charged with Promoting Prison Contraband in violation of HRS § 710–1022 (1993).

The State challenged COL 4, contending that the circuit court erroneously concluded that the bullet "could not be used to harm anyone," since, the State argued, the bullet was operable and could have been fired from a homemade device. In addition, the State challenged the conclusion that Rapozo's possession of a single bullet "does not violate the purpose of H.R.S. § 134–7(b); nor does it create the danger the statute was designed to prevent," where Rapozo's possession of a single bullet fell within the statute's prohibition against the possession of "any" ammunition. The State further challenged the circuit court's COL 4 insofar as it characterized the item in Rapozo's possession as a bullet.

Finally, the State challenged COL 6's conclusion that Rapozo had met her burden of proof in showing that the de minimis statute applied, on the basis that she failed to adduce any evidence that the bullet was not capable of being fired or otherwise exploded.

In her answering brief, Rapozo argued that the circuit court did not abuse its discretion in dismissing the charge as de minimis, because the use of firearms and/or ammuni-

tion was not a relevant factor in the situation leading to her arrest, and because her conduct did not cause or threaten the harm sought to be prevented by HRS § 134–7.

In its April 20, 2009 memorandum opinion, the ICA rejected the State's argument concerning the circuit court's characterization of the item in Rapozo's possession as a "bullet" as unfounded because the circuit court described the bullet as "operable," and it was therefore "sufficient to satisfy the meaning of ammunition under HRS § 134–7(b)." *State v. Rapozo*, No. 28215, 2009 WL 1090068 at *2 (App. Apr. 20, 2009) (mem.).

Concerning the State's challenge to COL 1, the ICA noted that the circuit court correctly concluded that the purpose of HRS § 134–7(b) was to "prevent ... the commission of crimes by convicted felons by prohibiting their possession or control of firearms and/or ammunition." *Id.* at *3. However, the ICA held that the circuit court disregarded a rule or principle of law in concluding "that the use of firearms and/or ammunition was not a relevant fact in causing 'the situation' that led to Rapozo's arrest," because "the situation" leading to her arrest on Count I of the felony indictment was her possession of the bullet. *Id.* The ICA further concluded that:

> The statute does not require proof that the convicted felon used or was about to use the firearm or ammunition. The statute was based on the premise that a felon's possession of a firearm or ammunition "gives rise to a reasonable apprehension that such person might use such firearms [or ammunition] for criminal and violent purposes." *See* 1968 Haw. Sess. Laws, Act 19, [§ 1 at 23] .... The court disregarded this principle of law when it based its finding on the absence of evidence that the ammunition was used or about to be used.

*Id.*

Similarly, the ICA concluded that the circuit court erred in COLs 4 and 6 because "[t]he circumstances of this case, i.e., that there was only one bullet, it was hidden in

---

5. The State also pointed out that the circuit court, in FOF 8, incorrectly described one of Rapozo's prior convictions as "Promoting Dangerous Drugs in the Second Degree, which would be a class B felony ... However, our records indicate and we believe Defendant will not contest that the conviction was for Promoting Dangerous Drugs in the Third Degree."

Rapozo's bra, and Rapozo did not also possess a firearm or other means of firing the bullet, do not negate the public safety purpose of the clear statutory mandate that convicted felons are not allowed to possess *any* firearms or ammunition." *Id.*

The ICA distinguished the possession of a single bullet from the possession of 0.001 grams of methamphetamine, which this court addressed in *State v. Viernes,* 92 Hawai'i 130, 988 P.2d 195 (1999) (affirming the trial court's dismissal of the charge of promoting a dangerous drug in the third degree as de minimis). *Rapozo,* 2009 WL 1090068 at *4. The ICA concluded that, unlike 0.001 grams of methamphetamine, which "would not cause a physiological effect on a human body and was not of a saleable amount ... [i]t is without question that one live .38 caliber bullet is exactly the sort of ammunition that could kill or seriously injure a human being." *Id.*

The ICA further concluded that Rapozo failed to meet her burden of proof in showing that the de minimis statute applied because her proffered explanation for her possession of the bullet, i.e., that she intended to use it as a charm for a bracelet, was "better characterized as a defense of justification.... Assertion of a justification defense should be made and considered by the trier-of-fact at trial." *Id.*

Finally, the ICA held that the circuit court abused its discretion in granting Rapozo's motion to dismiss the charge as de minimis. *Id.*

On June 5, 2009, the ICA entered its Judgment on Appeal. On September 1, 2009, Rapozo timely petitioned this court for a writ of certiorari to review the ICA's June 5, 2009 judgment. The State did not file a response.

## II. Standards of Review

### A. De Minimis Infraction

■ "The dismissal of a prosecution for a de minimis infraction ... is not a defense. The authority to dismiss a prosecution [as de minimis] rests in the sound discretion of the trial court." *Viernes,* 92 Hawai'i at 133, 988 P.2d at 198 (quoting *State v. Ornellas,* 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App.

1995)). "A court abuses its discretion if it clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Oughterson,* 99 Hawai'i 244, 253, 54 P.3d 415, 424 (2002) (quoting *State v. Balanza,* 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000)) (internal quotation marks and brackets omitted).

### B. Findings of Fact and Conclusions of Law

■ A circuit court's findings of fact and conclusions of law are reviewed as follows:

[A] trial court's findings of fact are subject to the clearly erroneous standard of review. A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with a definite and firm conviction that a mistake has been committed.

A conclusion of law is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews conclusions of law under the right/ wrong standard. Thus, a conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned. However, a conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

*State v. Gabalis,* 83 Hawai'i 40, 46, 924 P.2d 534, 540 (1996) (citations, internal quotation marks, brackets and ellipses omitted).

## III. Discussion

Rapozo's possession of a single operable bullet is within the scope of HRS § 134–7(b)'s clear prohibition against her possessing "any ... ammunition." Nevertheless, her conduct may still constitute a de minimis infraction under HRS § 702–236(1)(b) if it "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense," *see Viernes,* 92 Hawai'i at 134, 988 P.2d at 199, or did so to an extent "too trivial to warrant the condemnation of

conviction," *see State v. Akina,* 73 Haw. 75, 77, 828 P.2d 269, 271 (1992).

We begin our analysis by examining the history of Hawai'i's de minimus statute and the principles applicable to deciding motions under the statute. We then examine the purpose of HRS § 134–7(b). Finally, we consider whether Rapozo's conduct caused or threatened the harm sought to be prevented by the statute, or whether it did so only to a trivial extent.

We note that although we reach the same result as the ICA, we diverge from its analysis in several respects. For example, the ICA concluded that the circuit court erred in observing that "the use of firearms and/or ammunition was not a relevant fact in causing 'the situation' that led to Rapozo's arrest," and for relying on the fact that no firearm was recovered from Rapozo at the time of her arrest. However, when the FOF/COL are read in their entirety, it is apparent that the circuit court did not misapprehend the law; rather, the circuit court viewed the circumstances under which Rapozo initially came to the attention of police, and the fact that no firearms were recovered from her, as mitigating factors in assessing the extent of Rapozo's culpability. As we discuss below, the court must take the nature of the conduct alleged and the nature of the attendant circumstances into account. Thus, we cannot say that, as a matter of law, it was improper for the circuit court to take those factors into consideration.

The ICA also concluded that Rapozo's explanation for possessing the bullet "is better characterized as a defense of justification as to her possession." However, as we discuss below, Rapozo was required to address the nature of her conduct and the attendant circumstances in order to meet her burden of

establishing that her conduct constituted a de minimis infraction. Thus, Rapozo's explanation is relevant to the determination of whether she has carried that burden, and it was therefore appropriate for the circuit court to consider it.

**A. General principles applicable to determining motions brought under HRS § 702–236**

Hawai'i's de minimis statute was adopted in 1972, and was based on section 2.12 of the 1962 version of the Model Penal Code. 1972 Haw. Sess. Laws Act 9, § 1 at 50–51; Commentary to HRS § 702–236.[6] With one exception,[7] Hawai'i adopted the MPC provision in its entirety. The explanatory note to the MPC explains that "[s]ection 2.12 authorizes courts to exercise a power inherent in other agencies of criminal justice to ignore merely technical violations of law." 1 American Law Institute, *Model Penal Code and Commentaries* § 2.12 at 399 (1962). The comment to section 2.12 notes that "[t]he purpose of this section of the Code is to recognize the propriety of judicial discretion of this sort, and at the same time set forth the basis upon which it can reasonably be used[,]" *id.* at 402 (footnote omitted), and adds that "[a]melioration of the letter of the law is both necessary and inevitable, but at the same time should be the product of law rather than seemingly in its defiance[,]" *id.* at 404.

■ Consistent with that intent, HRS § 702–236 provides that "[t]he court may dismiss a prosecution if, having regard to the *nature of the conduct alleged* and the *nature of the attendant circumstances,* it finds that the defendant's conduct" constituted a de minimis infraction. HRS § 702–236(1) (emphasis added). Thus, we require that all of

---

6. The Commentary to HRS § 702–236 states that HRS § 702–236 was patterned after § 2.13 of the MPC. However, this appears to be an error. MPC § 2.12 is the de minimis provision. 1 American Law Institute, *Model Penal Code and Commentaries* § 2.12 at 399.

7. While section 2.12 of the MPC provides that a court "shall" dismiss a prosecution if it finds that the offense was de minimis, the legislature instead provided that the court "may" dismiss in such circumstances. 1972 Haw. Sess. Laws Act

9, § 1 at 50; Supplemental Commentary to HRS § 702–236 (quoting Sen. Conf. Comm. Rep. No. 2, in 1972 Senate Journal, at 741). In other words, the court can decline to dismiss a prosecution even if the de minimis statute is otherwise satisfied. The conference committee report explained that "[i]t is your [c]ommittee's intent to give the courts broad discretion in this matter." Sen. Conf. Comm. Rep. No. 2–72, in 1972 Senate Journal, at 741.

the relevant attendant circumstances be considered by the trial court. *See Viernes*, 92 Hawai'i at 133, 988 P.2d at 198 ("before [HRS § 702–236] can be properly applied in a criminal case, all of the relevant facts bearing on the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense should be shown to the judge so that the judge may consider all of the facts on this issue") (internal citations, parenthesis and quotation marks omitted); *State v. Fukagawa*, 100 Hawai'i 498, 504, 60 P.3d 899, 905 (2002) ("Dismissing a charge without any indicators from the surrounding circumstances to demonstrate a de minimis infraction would be an abuse of discretion.").

■ The defendant has the burden of bringing the relevant attendant circumstances before the court for its consideration. *See, e.g., State v. Oughterson*, 99 Hawai'i at 256, 54 P.3d at 427 (2002) ("[I]nsofar as the *defendant* advances a motion to dismiss on *de minimis* grounds, it is the *defendant*, and not the prosecution, who bears the burden of proof on the issue.") (emphasis in original).

■ In addition to requiring consideration of all the relevant attendant circumstances, HRS § 702–236 further requires consideration of "the harm or evil sought to be prevented by the law defining the offense[.]" HRS § 702–236; *see State v. Akina*, 73 Haw. 75, 78, 828 P.2d 269, 271 (1992); *State v. Ornellas*, 79 Hawai'i 418, 422–23, 903 P.2d 723, 727–28 (App.1995). As with all efforts to determine legislative intent, that inquiry relies primarily on the plain language of the statute. *State v. Kupihea*, 98 Hawai'i 196, 206, 46 P.3d 498, 508 (2002) ("[O]ur duty in interpreting statutes is to give effect to the legislature's intent[,] which is obtained primarily from the language of the statute.") (citation omitted) (brackets in original); *Akina*, 73 Haw. at 78, 828 P.2d at 271 (applying HRS § 702–236 to a charge brought under a particular statute, and noting that "[t]his court derives legislative intent primarily from the language of [the] statute and follows the general rule that in the absence of clear legislative intent to the contrary, the plain meaning of the statute will be given effect"); *Ornellas*, 79 Hawai'i at 423, 903

P.2d at 728 (applying HRS § 702–236 to an abuse of a family member case, ICA cites *Akina* and notes "[a]s evidenced by the language of HRS § 709–906, the purpose of the statute is to protect household members from physical abuse"). We therefore respectfully disagree with the dissent's assertion that "the legislative intent cannot be discerned by looking directly to the language of the statute itself." Dissenting opinion at 357, 235 P.3d at 353.

In *Kupihea*, the defendant was convicted of, inter alia, prohibited acts relating to drug paraphernalia, in violation of HRS § 329–43.5(a) (1993), in relation to his possession of "a green plastic container and/or a clear plastic ziploc bag." 98 Hawai'i at 198, 200, 46 P.3d at 500, 502 (emphasis omitted). Kupihea argued that the circuit court erred in failing to dismiss the charge as de minimis because "the items were everyday household items not intended or designed for use as drug paraphernalia[.]" *Id.* at 206, 46 P.3d at 508 (brackets in the original). In support of his argument, Kupihea relied on "comments of a legislator favoring passage of HRS § 329–43.5" concerning " 'head shops[,]' " and "[pipes] made for marijuana, for cocaine, for heroin, and all the assorted paraphernalia that accompany that." *Id.* (brackets in the original). Accordingly, Kupihea argued, "the ziploc bag and the plastic candy container did not actually threaten the harm or evil sought to be prevented by the law defining the offense, [that is], preventing the sale of items specifically designed or intended for use as drug paraphernalia." *Id.* (brackets in original).

In discerning the harm or evil sought to be prevented by HRS § 329–43.5, this court relied on the plain language of the statute, noting that *"[w]e do not resort to legislative history to cloud a statutory text that is clear."* *Id.* (emphasis added) (citation and quotation marks omitted). We further noted that "[o]ur duty in interpreting statutes is to give effect to the legislature's intent[,] *which is obtained primarily from the language of the statute."* *Id.* (some brackets in original and some added) (emphasis added) (citations and quotation marks omitted).

Applying these principles to HRS § 329–43.5, we concluded that "[Kupihea's] posses-

sion involved the harm or evil· sought to be prevented by HRS § 329–43.5[,]" *id.* at 207, 46 P.3d at 509, noting that:

> HRS § 329–43.5 states in relevant part ... that "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to pack, store, contain, [or] conceal a controlled substance" such as methamphetamine. Furthermore, as we have observed, HRS § 329–1 defines drug paraphernalia as including "*all* materials *of any kind* which are used in storing a controlled substance not limited to envelopes[ ] and other containers used in packaging small quantities of controlled substances." (Emphases added.) It is evident that, in enacting HRS § 329–1, the legislature cast a wide net, ensnaring not only containers that might ordinarily be thought of as used for "packaging small quantities of drugs," but anything used or possessed with the intent to use it for the proscribed purposes.

*Id.* at 206, 46 P.3d at 508 (ellipses omitted) (brackets in original).

Similarly, in *Akina,* the defendant was charged with custodial interference after assisting Sue, a ward of the State who had run away from her foster parents. 73 Haw. at 76–77, 828 P.2d at 270–71. The defendant, Sue's foster father, and the prosecutor all agreed that Akina was trying to help Sue. *Id.* Nevertheless, the circuit court denied Akina's motion to dismiss the charge as de minimis, reasoning that Akina's actions fell within the plain meaning of the statute and that convicting Akina would comply with legislative intent. *Id.* at 77, 828 P.2d at 271.

Akina argued to this court that his conduct fell within the de minimis provision because the legislative history of HRS § 707–727(1)(a), under which he was charged, "show[ed] that the statute was only intended to prevent child snatching, that is, interference of custody awarded upon divorce." *Id.* at 78, 828 P.2d at 271. This court disagreed, noting that "[t]his·court derives legislative intent *primarily from the language of statute* and follows the general rule that in the absence of clear legislative intent to the contrary, the plain meaning of the statute will be given effect." *Id.* We found "no evidence of

clear legislative intent either in the statute or legislative history to limit application of the statute to the divorce context." *Id.* at 79, 828 P.2d at 272. Accordingly, this court concluded that Akina's conduct fell within the plain meaning of the statute, but nevertheless held that the circuit court abused its discretion in denying Akina's motion to dismiss because Akina's conduct was "too trivial to warrant the condemnation of conviction." *Id.* (citing HRS § 702–236(1)(b)).

Likewise, in *Ornellas,* the defendant was convicted of abuse of a family and household member in violation of HRS § 709–906 (Supp.1992), which provided, in pertinent part, that "[i]t shall be unlawful for any person ... to physically abuse a family or household member[.]" 79 Hawai'i at 420 n. 1, 903 P.2d at 725 n. 1. The ICA determined that, "*[a]s evidenced by the language of HRS § 709–906,* the purpose of the statute is to protect household members from physical abuse. In essence, HRS § 709–906 seeks to prevent violence between those persons denoted as 'household members.'" *Id.* at 423, 903 P.2d at 728 (emphasis added) (citations omitted).

**B. The purpose of the prohibition in HRS § 134–7(b) is to reduce the risk that persons convicted of certain crimes will commit further crimes using firearms**

HRS § 134–7 provides, in relevant part:

Ownership or possession prohibited, when; penalty

· · ·

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

· · ·

.The statutory language explicitly proscribes the possession of "*any* firearm *or* ammunition" by a person convicted of a felony. HRS § 134–7(b) (emphasis added). The

statute reflects the determination by the legislature that the possession of firearms or ammunition by certain categories of people raises an unacceptable risk that those items will be used for unlawful purposes. As set forth below, the legislature has, over the years, expanded the scope of the statute by broadening the categories of both prohibited persons and prohibited items. Moreover, the legislative history of HRS § 134–7(b) reflects the legislature's belief that the possession of any firearm or ammunition by a felon raises an unacceptable risk that such firearms or ammunition will be used for "criminal and violent purposes." *See* 1968 Haw. Sess. Laws Act 19, § 1 at 23.

The origins of HRS § 134–7 were discussed by the ICA in *State v. Auwae*, 89 Hawaiʻi 59, 968 P.2d 1070 (App.1998), *overruled in part on other grounds* by *State v. Jenkins*, 93 Hawaiʻi 87, 997 P.2d 13 (2000):

> The first Hawaiʻi law prohibiting certain convicted persons from owning or possessing certain firearms was enacted in 1927 by the Territory of Hawaiʻi Legislature (the Territorial legislature) as section 4 of Act 206 of the 1927 Session Laws:
>
> > Section 4. Persons forbidden to possess small arms. No person who has been convicted in this territory or elsewhere, of having committed or attempted a crime of violence, shall *own or have in his possession or under his control, a pistol or revolver.*
>
> 1927 Sess. L., Act 206, § 4, at 209 (emphasis added). In 1933, the legislature amended the 1927 Sess. L., Act 206, § 4 to read, "No person who has been convicted ... of having committed or attempted a crime of violence, shall own or have in his possession or under his control *a pistol or revolver or ammunition therefor.*" 1933–34 Sess. L., Act 26, § 6, at 38.... The legislature did not specifically ... comment on the addition of the words "or ammunition therefor."

*Id.* at 68, 968 P.2d at 1079 (footnotes omitted) (emphasis in original).

Act 206 was subsequently codified in Revised Laws of Hawaiʻi (RLH) 1935 § 2545. *Id.* The statute was subsequently amended on multiple occasions, including in 1951, when the category of persons who were prohibited from possessing firearms was expanded to include any person who had been convicted of "the illegal use, possession or sale of narcotics[.]" 1951 Haw. Sess. Laws Act 253, § 1 at 422; S. Stand. Comm. Rep. No. 490, in 1951 Senate Journal, at 1079 ("The purpose of this bill is to prohibit the ownership or possession of any firearm or ammunition by a person convicted of the illegal use, possession, or sale of narcotics. The existing statute is aimed at any person convicted of a crime of violence or any attempt thereto.").

By 1965, the statute had been renumbered as RLH § 157–7, and read, in pertinent part:

> No person who has been convicted in this State or elsewhere, of having committed or attempted a crime of violence, or of the illegal use, possession or sale of narcotics, shall own or have in his possession or under his control any firearm or ammunition therefor.

RLH 1965 § 157–7(b).

In 1968, RLH § 157–7 was recodified by Act 19 as HRS § 134–7 (1968). Act 19 made violation of the statute a felony, rather than a misdemeanor. 1968 Haw. Sess. Laws Act 19, § 2 at 24; H. Stand. Comm. Rep. No. 321, in 1968 House Journal, at 367. In the text of Act 19, the legislature provided a statement concerning the purpose of the Act, which clearly identified the legislature's concern with violent gun crimes:

> During recent years, there has been an alarming increase in the number of crimes involving the use of firearms in the State of Hawaii. Up to two years ago the number of armed robberies was few in comparison to the total number of robberies of all kinds and the use or possession of firearms by other arrestees was very few in number.
>
> *Since the possession of firearms and/or ammunition by persons having a prior record of convictions for crimes of violence gives rise to a reasonable apprehension that such persons might use such firearms for criminal and violent purposes,* legislation prohibiting the possession or control of firearms by such persons and making

such possession a felony is urgent and necessary for protection of the general public.

1968 Haw. Sess. Laws Act 19, § 1 at 23 (emphasis added).

In 1971, the legislature expanded HRS § 134–7(b) to include all convicted felons. 1971 Haw. Sess. Laws Act 78, § 1 at 196; S. Stand. Comm. Rep. No. 524, in 1971 Sen. Journal, at 1036–37; *see also State v. Samonte*, 83 Hawai'i 507, 535, 928 P.2d 1, 29 (1996) ("The Hawai'i legislature has indicated that HRS § 134–7 applies to *all* convicted felons.") (emphasis in original). Also in 1971, the legislature added a provision to HRS § 134–7 that imposed a mandatory minimum sentence for the possession of any firearms or ammunition by a convicted felon.[8] 1971 Haw. Sess. Laws Act 78, § 1 at 196. In its report on the bill that added the provision, the Senate Committee on Judiciary noted:

> it is your committee's considered decision and opinion that in this one area of the law, namely the prevention of crimes involving illegal possession or use of firearms, the law must be strengthened immediately, and that these amendments, although drastic are justified and necessary for the protection and safety of the law-abiding citizens and residents of this State.

S. Stand. Comm. Rep. No. 524, in 1971 Sen. Journal, at 1036–37.

The House Judiciary Committee described the 1971 amendments as "amend[ing] the existing firearms laws so that they will be more effective in deterring and preventing the proliferation of crimes involving the illegal possession and use of firearms in the State of Hawaii." H. Stand. Comm. Rep. No. 931, in 1971 House Journal, at 1102. Moreover, this court has recognized that HRS § 134–7(b) is intended to prevent gun crimes by felons by prohibiting the posses-

sion of firearms and ammunition by such persons:

> [N]oting that "[l]icensed or registered firearms owners very seldom commit crimes with their guns," the 1971 Hawai'i legislature targeted severe punishment such as a "mandatory sentence of not less than one year" specifically at all *"persons convicted of any felony ... possessing any firearms or ammunition[.]"* Having "come to the conclusion that severe penalties and incarceration must be adopted as the only meaningful method of stopping gun crimes[,]" the Hawai'i legislature's purpose for HRS § 134–7(b) has clearly been to keep firearms and ammunition out of the hands of anyone who has "committed a felony[.]"

*Samonte*, 83 Hawai'i at 535, 928 P.2d at 29 (quoting S. Stand. Comm. Rep. No. 524, in 1971 Senate Journal, at 1036) (internal citations omitted) (some brackets in original and some added) (emphasis in original).

**C. Rapozo's conduct threatened the harm or evil sought to be prevented by HRS § 134–7(b)**

 The plain language of the statute and its legislative history support the conclusion that Rapozo's status (convicted felon, including a conviction for promoting dangerous drugs) and her conduct (concealed possession of a live bullet for the asserted purpose of making it into a charm for a bracelet) "actually cause[d] or threaten[ed] the harm or evil sought to be prevented by" HRS § 134–7(b). In reaching that conclusion, it is instructive to compare the circumstances of the instant case with those presented in *Viernes*.

In *Viernes*, we affirmed the circuit court's order granting Viernes's motion to dismiss the charge of promoting a dangerous drug in the third degree, in violation of HRS § 712–1243,[9] as de minimis, despite the statute's

---

**8.** The provision requiring a mandatory minimum sentence was removed in 1975, and violation of HRS § 134–7 was made a class C felony. 1975 Haw. Sess. Laws Act 24, § 4 at 34. In 1981, HRS § 134–7 was amended to provide that "any felon violating subsection 134–7(b) shall be guilty of a class B felony." 1981 Haw. Sess. Laws Act 239, § 5 at 466. However, the legislative history

concerning Act 239 is silent on the reason for the 1981 change. *See* Conf. Comm. Rep. No. 48, in 1981 House Journal, at 922; S. Stand. Comm. Rep. No. 847, in 1981 Senate Journal, at 1274–75; H. Stand. Comm. Rep. No. 727, in 1981 House Journal, at 1241–42.

**9.** HRS § 712–1243 (1993 & Supp.1998) provided in relevant part:

explicit prohibition against the possession of "any dangerous drug in any amount." 92 Hawai'i at 130–31, 988 P.2d at 195–96. Viernes had been placed under arrest for having threatened to harm his wife, and was found in possession of two small plastic packets, one of which contained 0.001 grams of a substance containing methamphetamine. *Id.* at 131, 988 P.2d at 196. Relying on *State v. Vance*, 61 Haw. 291, 307, 602 P.2d 933, 944 (1979),[10] this court held that:

an offense may be de minimis where it did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense. Under certain circumstances, this may, ... trump the "any amount" requirement of HRS § 712–1243.

*Viernes*, 92 Hawai'i at 134, 988 P.2d at 199 (quoting HRS § 702–236) (brackets and internal quotation marks omitted).

We concluded that the purpose of the prohibition against the possession of "any dangerous drug in any amount" under HRS § 712–1243 was "to respond to abuse and social harm," and "to counter increased property and violent crimes." 92 Hawai'i at 134, 988 P.2d at 199 (quoting H. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1050 and 1996 Haw. Sess. Laws Act 308, at 970) (internal quotation marks omitted). Although Viernes's conduct fell within the explicit scope of the statute, Viernes presented expert testimony that 0.001 grams of methamphetamine was not a sufficient quantity to "be sold or used in such a way as to have any discernable effect on the human body." *Id.* at 134, 988 P.2d at 199. We concluded that, "if the quantity of a controlled substance is so minuscule that it cannot be sold or used ..., it follows that the drug cannot lead to abuse, social harm, or property and violent crimes." *Id.* We accordingly held that the circuit court did not abuse its discretion in dismissing the charge, even though the alleged conduct violated the statute, because

the minuscule quantity Viernes possessed could not "lead to abuse, social harm, or property and violent crimes." *Id.* at 134, 988 P.2d at 199.

*Viernes* is distinguishable from the instant case. Whereas *Viernes* involved an amount of prohibited substance too minuscule to cause or threaten the harm the statute sought to prevent, *id.*, the instant case involves the possession of an operable bullet with the potential to kill or seriously injure a human being, to cause other physical harm, or to be used in the commission of a crime. The possession of a live bullet by a convicted felon under the circumstances presented here directly implicates the precise harm that the legislature sought to avoid in enacting HRS § 134–7(b). It was the legislature's judgment that the possession of firearms or ammunition by such persons posed an unreasonable risk that they would be used in "gun crimes." *Samonte*, 83 Hawai'i at 535, 928 P.2d at 29 (quoting S. Stand. Comm. Rep. No. 524, in 1971 Senate Journal, at 1036).

We respectfully disagree with the dissent's assertion that Rapozo "did not actually cause or threaten [the] harm which HRS § 134–7 seeks to prevent" because (1) she lacked the means of firing the bullet, and (2) she had not been convicted of a violent crime. Dissenting opinion at 350–51, 354–55. As we acknowledge above, *supra* page 333, the first point was a relevant factor for the circuit court to take into consideration in determining Rapozo's culpability. However, it is not dispositive. Otherwise, only felons who possess *both* guns *and* ammunition would be of concern to the legislature, a result which is inconsistent both with the plain language and legislative history of HRS § 134–7(b).

Nor do we agree that the legislature was not "manifestly concerned" with Rapozo because she had not been convicted of a violent

(1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

**10.** In *Vance*, this court declined to apply the de minimis provision to a prosecution for the possession of .7584 grams of a substance containing cocaine and three tablets of secobarbital. 61

Haw. at 307, 602 P.2d at 944. However, this court noted that, in the context of the possession of trace amounts of drugs, "where a literal application of HRS § 712–1243 would compel an unduly harsh conviction ... 'De minimis infractions' may be applicable to mitigate this result." *Id.*

felony. Dissenting opinion at 354. That interpretation is inconsistent with the plain language of the statute, as it has evolved over time. As noted above, that evolution reflects a steady expansion of the scope of the statute, culminating in the decision in 1971 to prohibit "all" felons from possessing firearms or ammunition. That history does not suggest that the legislature inadvertently cast too wide a net in 1971, but rather that it made a considered judgment, based on decades of experience under the predecessor versions of the statute, that "all" convicted felons were of concern.

The dissent arrives at its narrow interpretation of the purpose of HRS § 134-7(b) by focusing on one passage from the preamble to the 1968 Act that discussed the risk posed by felons who had been convicted of violent crimes. Dissenting opinion at 348–49, 351–52. With all due respect, this focus on a piece of the legislative history to the exclusion of the plain language of the statute is contrary to the approach taken by this court in *Akina* and *Kupihea*, and by the ICA in *Ornellas*, all of which emphasized the importance of the plain language of the statute.

Moreover, even if the analytical approach suggested by the dissent was valid, the result it reaches is nevertheless incorrect. The same section of the 1968 Act cited by the dissent notes that, in addition to persons convicted of violent crimes, there was another category of person that was of particular concern to the legislature:

> Further, the amendment of section [134–7] is necessary for uniformity of legislation to include those persons convicted of crimes involving the possession or sale of depressant or stimulant drugs to the class of persons prohibited from the ownership or possession of firearms as previous legislatures had done for those convicted of narcotics offenses; it is a fact that these classes of offenders are particularly dan-

gerous when they are apprehended or when they are under the influence of narcotics or drugs, and must therefore be prevented from possession of firearms for the public interest.

1968 Haw. Sess. Laws Act 19, § 1 at 23.

Although the legislature subsequently amended HRS § 134-7(b) in 1980 "to remove from the scope of section 134-7 those who have been convicted of the use or possession of drugs, unless such conviction is a felony[,]" the legislature made clear its intention that the "use or possession of prohibited drugs[,]" where such use or possession results in a felony conviction, would remain within the prohibitions of HRS § 134-7(b).[11] *See* Conf. Comm. Rep. No. 30–80, in 1980 Senate Journal, at 955; 1980 Haw. Sess. Laws Act 233, § 1 at 411.

Rapozo, who had a prior felony conviction for third-degree promotion of dangerous drugs, fits squarely within this category of offenders that was of particular concern to the legislature. Thus, even if one accepts the dissent's view that it is appropriate to limit the purpose of the statute to those concerns that were specifically identified in the legislative history, Rapozo fits within this core purpose of HRS § 134-7(b).

**D. Rapozo failed to carry her burden of demonstrating that her possession of a bullet was too trivial to warrant the condemnation of conviction**

In *State v. Park*, 55 Haw. 610, 616, 525 P.2d 586, 591 (1974), this court considered the applicability of the de minimis statute to charges against a number of candidates for failing to timely file campaign expense reports. We noted that:

> We think that before [HRS § 702–236] can be properly applied in a criminal case, *all of the relevant facts bearing upon the defendant's conduct and the nature of the*

11. The dissent asserts that "[p]ersons convicted of possession or use of drugs, where such conviction is a felony, fall within the scope of HRS § 134–7 not because the legislature was specifically concerned with such persons, but because HRS § 134–7 prohibits all felons, whether or not the conviction is drug-related, from possessing ammunition or firearms." Dissenting opinion at

356. However, the dissent's assertion is inconsistent with the express statement of the legislature that "the mere use or possession of prohibited drugs, *unless the amount used or possessed constitutes a felony,* do not warrant prosecution." Conf. Comm. Rep. No. 30–80, in 1980 Senate Journal, at 955.

*attendant circumstances regarding the commission of the offense should be shown to the judge.* Such a disclosure would then enable the judge to consider all of the facts on this issue, so that he can intelligently exercise a sound discretion, consistent with the public interest, whether to grant the dismissal of a criminal case[.]

*Id.* at 616, 525 at 591 (emphasis added).

In addition, this court outlined a number of factors for the trial court to consider in making its determination, including (1) the background, experience and character of the defendant; (2) knowledge on the part of the defendant of the consequences of the act; (3) the circumstances surrounding the offense; (4) the harm or evil caused or threatened by the offense; (5) the probable impact of the offense on the community; (6) the seriousness of the punishment; (7) the mitigating circumstances; (8) possible improper motives of the complainant or prosecutor; (9) "any other data which may reveal the nature and degree of the culpability in the offense committed by each defendant[.]" *Id.; see also State v. Cabana,* 315 N.J.Super. 84, 716 A.2d 576, 579 (N.J.Super.Ct. Law Div.1997) (defendant's conduct "under the de minimis statute is not viewed in isolation, but coupled with the surrounding circumstances which play an integral part herein to explain the what, why and how of defendant's intent."). Because the district court in *Park* failed to take those factors into account in dismissing the charges as de minimis, we reversed its dismissal of the charges, noting:

[T]he district court did not consider the merits of this issue on an individual basis.... The record in each case is utterly bare of the attendant circumstances surrounding these violations. Under the circumstances, we think it was an abuse of discretion to dismiss the charges as de minimis infractions without any indicators to show that each of these offenses was in fact an innocent, technical infraction, not actually causing or threatening any harm or evil sought to be prevented by [the statute under which the defendants were charged], or that the harm or evil caused

or threatened was [too] trivial to warrant the condemnation of conviction.

*Park,* 55 Haw. at 617–18, 525 P.2d at 591–92.

In *State v. Fukagawa,* 100 Hawai'i 498, 506–07, 60 P.3d 899, 907–08 (2002), this court affirmed an order of the trial court denying Fukagawa's motion to dismiss as de minimis a charge of promoting a dangerous drug in the third degree. The trial court found that the amount of substance containing methamphetamine that Fukagawa possessed could have an effect on the nervous system or mind, and was therefore not de minimis. *Id.* at 503, 60 P.3d at 904. We noted that in making a motion to dismiss an offense as de minimis,

[T]he defendant bears the burden of establishing that "his or her conduct neither caused nor threatened to cause the harm or evil that the statute, under which he or she is charged, seeks to prevent." In advancing a motion to dismiss a charge as a de minimis offense, the defendant must address both "the nature of the conduct alleged *and* the nature of the attendant circumstances." Further, ... dismissal of a prosecution without any indicators from the surrounding circumstances that demonstrate a de minimis infraction would constitute an abuse of discretion.

*Id.* at 507, 60 P.3d at 908 (citations omitted) (emphasis in original); *see State v. Oughterson,* 99 Hawai'i at 256, 54 P.3d at 427 (noting that "insofar as the *defendant* advances a motion to dismiss on de minimis grounds, it is the *defendant,* and not the prosecution, who bears the burden of proof on the issue") (emphasis in original).

Moreover, we noted that "quantity is only one of the surrounding circumstances a court must consider." *Id.* at 505, 60 P.3d at 906 (citing *Vance,* 61 Haw. at 307, 602 P.2d at 944). We held that Fukagawa's assertion that his conduct was de minimis failed because "the defense focused solely upon the amount of methamphetamine possessed and presented neither testimony nor other evidence regarding the circumstances attendant to Fukagawa's possession of drug paraphernalia and the substance containing methamphetamine." *Id.* at 507, 60 P.3d at 908. Thus, "[i]n light of the defendant's burden to

prove that his conduct constituted a de minimis infraction and the evidence adduced in this case," we held that the trial court did not abuse its discretion in denying the motion. *Id.*

In *State v. Carmichael,* 99 Hawai'i 75, 76, 53 P.3d 214, 215 (2002), the defendant was pulled over by police who observed him traveling between 84 and 86 mph in an area with a 30 mph speed limit. He smelled of alcohol, was unsteady on his feet, slurred his words, and gave inconsistent answers regarding the amount he had been drinking. *Id.* He was arrested and taken to the police station, where a glass pipe containing a white crystalline substance, two metal scrapers, a small plastic straw, and "several ziplock bags containing a light rock residue visible to the naked eye" were found in his sock. *Id.* Carmichael was charged with, inter alia, promoting a dangerous drug in the third degree under HRS § 712–1243, and the circuit court declined to dismiss that charge as de minimis. *Id.* at 77, 53 P.3d at 216.

On appeal, this court affirmed. In a plurality opinion, Chief Justice Moon observed that "the defendant bears the burden of establishing that the conduct constituted a de minimis infraction[,]" and must "adduce evidence regarding both the conduct alleged and the attendant circumstances in order to support a finding that the alleged conduct was de minimis." *Id.* at 80, 53 P.3d at 219 (opinion of Moon, C.J., and Nakayama, J.) (citation omitted). The plurality noted that at both the hearing on his motion to dismiss and on appeal, Carmichael focused his argument exclusively on whether the amount of drugs in his possession constituted a useable amount, and "did not adduce any evidence or

present any argument with respect to the attendant circumstances," namely Carmichael's possession of multiple items associated with the use and distribution of methamphetamine, his driving at excessive speed, and the arresting officer's determination that Carmichael was impaired. *Id.* The plurality observed:

> By failing to address these attendant circumstances, the defense failed to meet its burden of providing evidence to support a finding that the conduct alleged "did not actually cause or threaten the harm or evil sought to be prevented by [HRS § 712–1243] or did so only to an extent too trivial to warrant the condemnation of conviction."

*Id.* (quoting HRS § 702–236) (brackets in original).

Here, Rapozo addressed her alleged conduct and the attendant circumstances solely through her attorney's declaration in support of her motion to dismiss. Although the declaration asserted that "Rapozo's explanation for having the bullet in her possession was that she was going to have it made into a charm for a bracelet," Rapozo offered no further evidence or testimony to corroborate that asserted explanation. She did not explain why, if her purpose in possessing the bullet was to make it into a charm for a bracelet, she was carrying it with her while driving at 1:14 a.m. in Waikiki. Nor did she explain why, if her purpose was benign, she concealed the bullet in an intimate part of her clothing. Nor did she explain where and when she obtained the bullet, and where she was traveling from and going to when she was stopped by police.[12]

---

12. The dissenting opinion asserts that the circuit court "considered *all of the relevant and material circumstances* attendant to [Rapozo's] possession" because the court considered the facts as set forth in Rapozo's declaration of counsel. Dissenting opinion at 358 (emphasis added). With all due respect, however, the dissent's view would appear to allow a defendant to limit which circumstances are considered "material." However, as we discuss further *infra*, the trial court should consider "*all* of the relevant facts bearing on the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense" before dismissing a charge as de minimis, *see Viernes,* 92 Hawai'i at 133, 988 P.2d at 198 (emphasis added)

(citation omitted), and we have found abuse of discretion when in our judgment the trial court failed to do so, *see Park,* 55 Haw. at 617–18, 525 P.2d at 591–92. We have also affirmed when the trial court denied motions to dismiss and the defendant failed to address attendant circumstances that we considered to be relevant. *See Carmichael,* 99 Hawai'i at 80, 53 P.3d at 219 (plurality opinion of Moon, C.J.; and Nakayama, J.) (affirming denial of motion to dismiss the charge of promoting a dangerous drug in the third degree as de minimis where the defendant addressed the quantity of drug possessed, but did not address his possession of drug paraphernalia, his driving at excessive speed, or the ar-

Notably, the circuit court, in its findings of fact, did not determine whether Rapozo's asserted explanation was credible. FOF 6 merely reiterates that "Ms. Rapozo's explanation for possessing the bullet was that she was going to have it made into a charm for a bracelet." In other words, although the circuit court accurately repeated the explanation as set forth in the declaration of Rapozo's counsel, it did *not* find that it was in fact true. We therefore respectfully disagree with the dissent's assertion that "[Rapozo's] explanation ... is binding on this court."[13] Dissenting opinion at 350.

It is not surprising that the circuit court failed to make a finding on the credibility of the explanation, since there was insufficient information in the record to enable it to do so. As noted above, Rapozo had the burden in the circuit court of establishing the relevant attendant circumstances, but failed to place any information in the record that would have enabled the court to determine that her explanation was credible in light of the surrounding circumstances, and that her conduct was in fact "trivial" given the purposes of the statute. She chose not to present her own testimony or that of any other "live" witness that would have allowed the explanation to be further developed, and also limited the attendant circumstances that were presented to the court to the immediate circumstances of her arrest. While we agree that the de minimis statute does not specify any particular method of proof by the defendant, dissenting opinion at 357, nevertheless it does require the defendant to present all of the relevant attendant circumstances to the court, and Rapozo failed to do so here. *See*

*State v. Park,* 55 Haw. at 616, 525 P.2d at 591 ("We think that before [HRS § 702–236] can be properly applied in a criminal case, all of the relevant facts bearing upon the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense should be shown to the judge.").

The dissent further asserts that Rapozo's explanation "cannot be viably or fairly challenged on appeal or relied on by the majority" because the State "did not challenge the credibility of [Rapozo's] explanation in its memorandum in opposition to [Rapozo's] motion to dismiss or at the hearing on the motion." Dissenting opinion at 359. However, the State's opposition to Rapozo's motion clearly disputed Rapozo's characterization of the relevant events, by arguing that "[Rapozo's] possession of ammunition that is capable of being fired, *considered with all of the other attendant circumstances,* shows that [Rapozo's] conduct was causing or threatening the harm or evil sought to be prevented by the law defining the offense." (Emphasis added). Moreover, in its Opening Brief to the ICA, the State challenged the circuit court's COL 6, which concluded that Rapozo had met her burden of showing that the de minimis statute applied. In support of this point of error, the State argued, inter alia, that there was no "determination of credibility with regard to [Rapozo's] explanation[.]"[14] While the dissent cites to *Wisdom v. Pflueger,* 4 Haw.App. 455, 459, 667 P.2d 844, 848 (1983) for the proposition that "an argument supporting a challenge to a conclusion on appeal does not amount to a challenge to a finding," dissenting opinion at 360, the ICA

resting officer's determination that the defendant was intoxicated); *Fukagawa,* 100 Hawai'i at 506–07, 60 P.3d at 907–08 (affirming denial of motion to dismiss the charge of promoting a dangerous drug in the third degree as de minimis because the amount possessed was sufficient to be " 'used' by someone" and, alternatively, because the defendant "presented neither testimony nor other evidence regarding the circumstances attendant to [his] possession of drug paraphernalia and the substance containing methamphetamine").

13. We further disagree with the dissent's assertion that "it can be inferred from both the inclusion of [Rapozo's] explanation in its findings and

in ultimately granting [Rapozo's] de minimis motion, that the [circuit] court made an assessment as to [Rapozo's] explanation." Dissenting opinion at 360. To the contrary, the wording of FOF 6 suggests that the circuit court reserved decision on the credibility of Rapozo's proffered explanation. For the same reason, we disagree with the implication that we have second-guessed the circuit court's determination with regard to credibility. Dissenting opinion at 360–61.

14. We note that Rapozo has not, in her Answering Brief to the ICA or in her Application to this court, objected to the State's challenge to the credibility of her explanation on the ground that the argument was waived.

in *Pflueger* explained that "[i]f a finding is not properly attacked, ... any conclusion which follows from it and is a correct statement of the law is valid." 4 Haw.App. at 459, 667 P.2d at 848. Here, FOF 6 merely repeats Rapozo's explanation, and thus COL 6 does not "follow[ ] from" FOF 6. Accordingly, the credibility of Rapozo's explanation and the failure of the circuit court to enter a finding on that issue are properly before this court.

In order to properly exercise its discretion under HRS § 702–236, the trial court must consider all of the relevant surrounding circumstances. *See Park,* 55 Haw. at 617–18, 525 P.2d at 592. Where, as here, the defendant's explanation for his or her conduct is central to that inquiry, it is not sufficient to simply repeat the defendant's explanation without making a finding as to its credibility in light of all the circumstances. *See State v. Balanza,* 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (noting that "[b]efore a trial court can address whether an offense constitutes a de minimis infraction, the court must make factual determinations regarding the circumstances of the offense") (citation omitted).

We respectfully disagree with the dissent's suggestion that our decision here is inconsistent with *State v. Hinton,* 120 Hawai'i 265, 273, 204 P.3d 484, 492 (2009), dissenting opinion at 363–65, where, in reviewing a trial court's decision to dismiss an indictment after defendant's first trial resulted in a mistrial, we observed that "[t]he burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." Assuming arguendo that a "strong showing" is required in the instant context as well, this court has held that a failure by a trial court to consider all of the relevant attendant circumstances suffices to make the necessary showing. *See Park,* 55 Haw. at 617–18, 525 P.2d at 591–92; *cf. Fukagawa,* 100 Hawai'i at 507, 60 P.3d at 908. The failure to consider those circumstances, the consideration of which is required by HRS § 702–236, means that the circuit court has "disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Oughterson,* 99 Hawai'i at 253, 54 P.3d at 424 (citation omitted). Where the issue is whether a trial court applied incorrect legal principles in exercising its discretion, we freely review the court's decision to determine whether the law was correctly applied. *Estate of James Campbell,* 106 Hawai'i 453, 461, 106 P.3d 1096, 1104 (2005) ("although the trial court's discretion under Rule 24(b)(2) is very broad, we may overturn the probate court's denial of intervention under HRCP Rule 24(b)(2) if we conclude that it has disregarded legal principles to the substantial detriment of Appellants") (internal quotation marks, brackets and citations omitted); *Life of the Land v. Land Use Comm'n,* 63 Haw. 166, 180, 623 P.2d 431, 443 (1981) ("where the record discloses a possible misapprehension or misapplication of Rule 23's criteria, it is incumbent upon us to conduct a careful review of the rule's application to the facts involved").

Moreover, even if Rapozo's explanation is accepted at face value, it does not, on the current record, suffice to establish that her conduct was de minimis. Although the declaration of Rapozo's counsel states that Rapozo intended to make the bullet into a charm for a bracelet, it does not state that Rapozo intended to render the bullet inoperable in doing so. Thus, under her proffered explanation, Rapozo could have carried a live bullet with her indefinitely. This contrasts sharply with a situation in which a defendant possesses a prohibited item for a short period of time and for a reason that is not inconsistent with the purpose of the statute in question. *See Carmichael,* 99 Hawai'i at 80 n. 8, 53 P.3d at 219 n. 8 (noting that "in a case where the evidence demonstrates that a defendant had knowingly recovered a quantity of methamphetamine with the intent to deliver it to police as evidence of a crime when he was arrested and charged for possessing 'any amount' of a dangerous drug, dismissal as a de minimis offense would clearly be warranted"); *see also Park,* 55 Haw. at 617–18, 525 P.2d at 592 ("we think it was an abuse of discretion to dismiss the charges as de minimis infractions, without any indicators to show that each of these offenses was in fact an innocent, technical infraction").

We cannot say that the open-ended possession by Rapozo of a live round of ammunition threatens the harm that the statute was designed to prevent only to a trivial extent. Thus, Rapozo failed to carry her burden of proof on the motion to dismiss.

It is instructive to compare the circumstances of this case to those surrounding the defendant's conduct in *State v. Akina*, 73 Haw. 75, 828 P.2d 269 (1992). In *Akina*, the defendant was charged with custodial interference after assisting Sue, a ward of the State who had run away from her foster parents. *Id.* at 76, 828 P.2d at 270. Sue had approached Akina at a beach park, and told him that she was nineteen years old and pregnant. *Id.* Akina invited her to come to the home that he shared with his mother, and Sue stayed with them for two weeks, during which time Akina informed Sue's foster parents of her whereabouts and requested that Sue return to them. *Id.* Sue eventually did return home but ran away again to Akina. *Id.* at 76–77, 828 P.2d at 270–71. When Akina again attempted to return her to her foster parents, the foster parents told him that it was a criminal offense to help runaways. *Id.* at 77, 828 P.2d at 271. When Sue refused to return, he agreed to let her stay at his home until the following week. *Id.* Sue's foster parents then called the police, and Akina was charged with custodial interference in violation of HRS § 707–727(1)(a) (1985).[15] *Id.*

> The case went to trial, where
>
> [D]efendant testified that he was just trying to help Sue. [Sue's foster father] agreed, testifying that he felt defendant was a nice person who was sincerely trying to help. Even the prosecuting attorney conceded that defendant's pattern of behavior showed that he wanted to help Sue. The court concluded that "[d]efendant's main sin was being—or allowing himself to be taken advantage of."

*Id.* (some brackets in the original and some added).

However, the circuit court denied Akina's motion to dismiss the charge as de minimis, reasoning that Akina's actions fell within the plain meaning of the statute and that convicting Akina would comply with legislative intent. *Id.* This court agreed that Akina's conduct fell within the plain meaning of the statute, but nevertheless held that the circuit court abused its discretion in denying Akina's motion to dismiss because Akina's conduct was "too trivial to warrant the condemnation of conviction." *Id.* at 79, 828 P.2d at 272 (citing HRS § 702–236(1)(b)). We noted that under the circumstances, "there was little [Akina] could do to worsen Sue's relationship with her custodial parents." *Id.* Moreover, "[Akina's] actions did not cause the rift between Sue and her parents, and it is unlikely that his actions altered the existing custodial relationship at all." *Id.*

In sum, the record in *Akina* amply established that the defendant's interference did not "warrant the condemnation of conviction" when his conduct and the attendant circumstances were examined in light of the purposes of the statute. In contrast, the explanation proffered in the declaration of Rapozo's attorney did not adequately address the nature of her conduct and the circumstances attendant to the offense, and thus did not establish that Rapozo's conduct was trivial.[16] *See Park*, 55 Haw. at 617–18, 525 P.2d at 592; *Fukagawa*, 100 Hawai'i at 504, 60 P.3d at 905. Therefore, Rapozo did not carry her burden of establishing that the de minimis provision applies. *See id.*

Finally, we note that both this court and the ICA have considered the seriousness of the alleged conduct in determining whether a trial court abused its discretion in ruling on a motion to dismiss a charge as de minimis. *See, e.g., Park*, 55 Haw. at 617, 525 P.2d at

---

15. HRS § 707–727 (1985) provided in relevant part:

 (1) A person commits the offense of custodial interference in the second degree if:

 (a) He knowingly takes or entices a person less than eighteen years old from his lawful custodian, knowing that he has no right to do so.

16. We note that *Akina* was decided with the benefit of a full trial record. 73 Haw. at 77, 828 P.2d at 271. Nothing in this opinion should be construed to prevent Rapozo from pursuing a motion to dismiss pursuant to HRS § 702–236 at a later time in the event a more fully developed record supports dismissal.

592 (noting that the court should consider "the resulting harm or evil, if any, caused or threatened by these infractions; the probable impact of these violations upon the community; the seriousness of the infractions in terms of the punishment ..."). For example, in *State v. Schofill,* 63 Haw. 77, 621 P.2d 364 (1980), the trial court dismissed a charge of promoting a dangerous drug in the first degree, where the defendant allegedly agreed to sell an undercover police officer a quarter ounce of cocaine for $550. *Id.* at 79, 83, 621 P.2d at 376, 370. This court reversed, noting that the charge of "[p]romoting a dangerous drug in the first degree ... is a Class A felony, punishable by imprisonment for a period of 20 years" and observing that "[t]raffic in narcotics can hardly be said to be a de minimis offense." *Id.* at 83, 621 P.2d at 370.

Similarly, in *State v. Johnson,* 3 Haw.App. 472, 475, 653 P.2d 428, 431 (1982), the ICA considered whether a prosecution for negligent homicide, where the defendant's car crossed over the centerline of Hana Highway and struck an oncoming car, killing a passenger therein, was de minimis. The ICA affirmed the order of the circuit court denying Johnson's motion to dismiss, concluding that, "[u]nder the circumstances of a case where a death results from one's negligence, we deem it an assault on good sense to argue that the violator's actions were de minimis." *Id.* at 484, 653 P.2d at 436-37.

In the instant case, the possession of ammunition in violation of HRS § 134-7(b) is a class B felony, involving conduct that has the potential for serious public safety consequences. While not dispositive, these factors weigh against granting the motion.

### IV. Conclusion

The June 5, 2009 judgment of the Intermediate Court of Appeals is affirmed, and this matter is remanded to the Circuit Court of the First Circuit for proceedings consistent with this opinion.

Dissenting Opinion by ACOBA, J., in which DUFFY, J., joins.

I respectfully dissent.

I would hold that the decision of the circuit court of the first circuit (the court) to dismiss a violation of Hawai'i Revised Statutes (HRS) § 134-7(b) & (h) (Supp.2007) by Petitioner/Defendant–Appellant Tanya Rapozo a.k.a. Tanya Rapoza (Petitioner), for possession of a single bullet as de minimis under HRS § 702-236 (1993), rests within the sound discretion of the court. Accordingly, the dismissal should be affirmed because under the attendant circumstances, the court cannot be said to have *"clearly"* abused its discretion. *State v. Hironaka,* 99 Hawai'i 198, 204, 53 P.3d 806, 812 (2002). In my view, then, the Intermediate Court of Appeals (ICA) gravely erred in deciding otherwise. *See State v. Rapozo,* No. 29215, 2009 WL 1090068, at *4 (App. Apr. 20, 2009) (mem.)

On April 24, 2007, Petitioner, a convicted felon, was charged by Respondent/Plaintiff–Appellee State of Hawai'i (Respondent or the prosecution) with possession of ammunition, HRS § 134-7(b), in Count I of the indictment. The incident arose from Petitioner's arrest for driving under the influence and driving without a license, after which Petitioner was found in possession of the bullet, located in her brasserie. On February 26, 2008, Petitioner filed a motion to dismiss Count I as a de minimis infraction under HRS § 702-236. The court granted the motion. On April 20, 2009, the ICA vacated the dismissal. The question presented on certiorari is whether the ICA gravely erred in concluding that the court abused its discretion in dismissing Count I.

### I.

Both the plain language of HRS § 702-236 and the commentary thereto make abundantly plain that the trial court is afforded broad discretion in deciding whether to dismiss a prosecution as a de minimis infraction. HRS § 702-236 provides in pertinent part:

> (1) The court *may* dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, *it finds* that the defendant's conduct:
>
> . . . .
>
> (b) Did not actually cause or threaten the harm or evil sought to be pre-

vented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]

(Emphases added.) The supplemental commentary to HRS § 702–236 explains that

[t]he Legislature deleted the mandatory "shall" and inserted in lieu thereof the permissive "may", in order "to make the court's power to dismiss a prosecution discretionary upon the finding that the conduct constituted a de minimis infraction. It is your Committee's intent *to give the courts broad discretion in this matter.*"

(Quoting S. Conf. Comm. Rep. No. 2, in 1972 Senate Journal, at 741.) (Emphasis added.)

Hence, "[t]he authority to dismiss a prosecution under § 702–236 rests in the sound discretion of the trial court[ ]" and will be reversed "only if the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to a substantial detriment of a party litigant.'" [1] *Hironaka,* 99 Hawai'i at 204, 53 P.3d at 812 (quoting *State v. Viernes,* 92 Hawai'i 130, 133, 988 P.2d 195, 198 (1999) (quoting *State v. Ornellas,* 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App.1995))). Indeed, "[t]his decision is akin to those made regarding the admissibility of certain types of evidence, which require 'judgment calls' on the part of the trial judge." *Viernes,* 92 Hawai'i at 133, 988 P.2d at 198 (citations omitted). Furthermore, "[t]he burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." *State v. Hinton,* 120 Hawai'i 265, 273, 204 P.3d 484, 492 (2009) (internal quotation marks and citation omitted). For the reasons set forth below, it cannot be said that the court abused its discretion because a court could conclude that Petitioner's conduct constituted a de minimis infraction, without clearly exceeding

the bounds of reason or violating principles of law or practice.

## II.

In granting Petitioner's motion to dismiss Count I as de minimis, the court set forth the following relevant findings of fact (findings) and conclusions of law (conclusions):

### *Findings of Fact*

1. At approximately 1:14 a.m. on September 19, 2006, [Petitioner] was driving a white pickup truck on Ala Wai Boulevard in the City and County of Honolulu, State of Hawaii, when she was pulled over by Honolulu Police Officer Jason Pistor for driving erratically.

. . . .

3. *Officer Pistor then placed [Petitioner] under arrest for driving under the influence and without a driver's license* and took her to the Central Processing Desk of the main police station.

4. At approximately 2:30 a.m. [Petitioner] was given a pat down search by police matron Laura Chun who felt something hard in [Petitioner's] brassiere.

5. Matron Chun escorted [Petitioner] into the holding cell to conduct a more extensive preincarceration search *and found a single .38 caliber operable bullet in the left cup of [Petitioner's] bra.*

6. *[Petitioner's] explanation for possessing the bullet was that she was going to have it made into a charm for a bracelet.*

7. *No gun was found by either Matron Chun or police officer Pistor, nor was any other ammunition, drugs or other contraband found in [Petitioner's] possession or control.*

8. *[Petitioner], who has previously been convicted of Unauthorized Control of*

---

1. Although the majority states in a footnote, that "the court can decline to dismiss a prosecution even if the de minimis statute is otherwise satisfied[,]" majority opinion at 337, 235 P.3d at 333 n.7, there is no dispute that the court's discretion permits it to dismiss *or* decline to dismiss a prosecution. The majority acknowledges that "HRS § 702–236 provides that 'the court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of

the attendant circumstances, it finds that the defendant's conduct' constituted a de minimis infraction." Majority opinion at 337, 235 P.3d at 333 (emphases, brackets, and citation omitted). The foregoing emphasizes that the court's discretion is at the crux of the de minimis statute. It is important to note that in this case, the court exercised its discretion in favor of *dismissing* Count I.

*Propelled Vehicle, Promoting Dangerous Drugs in the Second Degree and Theft in the Second Degree* and is prohibited from possessing or controlling a firearm and/or ammunition, was arrested and charged under HRS § 134–7(b), a class B felony.

*Conclusions of Law*

1. *The purpose of HRS § 134–7(b) and (h) is to protect the public from criminal activity involving the use of firearms by felons convicted of certain crimes along with people under judicial restraint by prohibiting these individuals from possessing or controlling firearms and/or ammunition. In this case, the use of firearms and/or ammunition is not a relevant factor in causing the situation that led to defendant's arrest.*

2. Under HRS § 134–7(b) the possession of ammunition in any amount is a violation. (*See, State v. Pinero,* 70 Haw. [509] 709, 778 P.2d 704 (1989)). However, the law does recognize that under certain circumstances the infraction is so small as to make the penalty for the violation of a particular statute unreasonable. HRS Section 702–236.

3. HRS Section 702–236 provides that the [c]ourt may dismiss a prosecution if, considering all of the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too trivial to warrant the condemnation of conviction. (*See State v. Viernes,* 92 Hawai'i 130, 988 P.2d 185[sic] (1999); *State v. Carmichael,* 99 Hawai'i 75, 80, 53 P.3d 214, 219 (2002)).

4. *Under the facts of this case, a single bullet hidden from plain view in [Petitioner's] bra, without the capacity to fire it and which could not be used to harm anyone, does not violate the purpose of H.R.S. § 134–7(b); nor does it create the danger the statute was designed to prevent.*

5. Where an infraction is so infinitesimal that the possibility of the harm sought to be prevented by a statute is minuscule, the violation may constitute a "de minimis infraction" within the meaning of H.R.S. § 702–236. *State v. Viernes,* 92 Hawaii 30[sic], 988 P.2d 185[sic] (1999). In that event the [c]ourt in its sound discretion may dismiss the prosecution brought against the defendant for the statutory violation. *Id.*

6. *Clearly, [Petitioner] has met her burden of showing that the de minimis statute applies. Therefore, in the interest of justice, this [c]ourt chooses to exercise the discretion provided by H.R.S. § 702–236 and the authorities cited herein, to dismiss Count I of the indictment with prejudice.*

(Emphases added).

The court's findings are reviewed under the clearly erroneous standard. *Bhakta v. County of Maui,* 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (stating that "[the supreme court] reviews the trial court's [findings] under the clearly erroneous standard" (citing *Ueoka v. Szymanski,* 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005))). A "[finding] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Casumpang v. ILWU Local 142,* 108 Hawai'i 411, 419, 121 P.3d 391, 399 (2005). In the absence of a showing that a finding is clearly erroneous, findings are binding on this court. *State v. Eastman,* 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) ("As the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous.") (Internal citation omitted.) Generally, findings not challenged on appeal are also binding on this court. *Kelly v. 1250 Oceanside Partners,* 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006) (citations omitted). The court's conclusions, however, are reviewed de novo. *State v. Hicks,* 113 Hawai'i 60, 70, 148 P.3d 493, 503 (2006) (citing *State v. Kido,* 109 Hawai'i 458, 461, 128 P.3d 340, 343 (2006)).

A.

To determine whether an alleged infraction is de minimis under HRS § 702–236(1)(b),

"[w]e must first examine the legislative intent behind the statute[.]" *Ornellas*, 79 Hawai'i at 423, 903 P.2d at 728 (citing *State v. Vance*, 61 Haw. 291, 602 P.2d 933 (1979) (other citation omitted)). De minimis review specifically requires the court to ascertain the legislative intent of the statute to determine whether the defendant's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]" HRS § 702–236(1)(b). The intent of the legislature "is obtained primarily from the language of the statute." *State v. Kupihea*, 98 Hawai'i 196, 206, 46 P.3d 498, 508 (2002).

With possession crimes, however, the legislature often criminalizes possession as a means of preventing some other harm or evil. Stated differently, "the harm or evil sought to be prevented" by the statute, HRS § 702–236(1)(b), is most often, not possession itself but some other harm or evil not discernable from the face of the statute. *See Viernes*, 92 Hawai'i at 134, 988 P.2d at 199 (determining that the legislative purpose behind the statute criminalizing the possession of "any dangerous drug in any amount," is "to respond to abuse and social harm" and "to counter increased property and violent crimes" (internal quotation marks and citation omitted)).

In sum, HRS § 134–7 prohibits certain persons from possessing firearms and/or ammunition. It is apparent that the legislature criminalized the possession of firearms and/or ammunition as a means of preventing some other harm or evil which cannot be gleaned from the plain language of the statute itself. We thus turn to the legislative history.

B.

The 1968 version of HRS § 134–7(b) provided in pertinent part:

(b) No person who has been convicted in the State or elsewhere of having committed or attempted a crime of violence, or the illegal use, possession or sale of narcotics, or any depressant or stimulant drug, as defined by the Revised Laws of Hawaii 1955, as amended, shall own or have in his possession or under his control any firearm or ammunition therefor.

1968 Haw. Sess. Laws Act 19, § 1 at 23. The legislative history reveals the legislature's concern with "an alarming increase in the number of crimes involving the use of firearms in the State of Hawaii." 1968 Haw. Sess. Laws Act 19, § 1 at 23. The legislature noted that

[s]ince the possession of firearms and/or ammunition by persons having prior record of convictions for crimes of violence gives rise to a reasonable apprehension that such persons might use such firearms for criminal and violent purposes, legislation prohibiting the possession or control of firearms by such persons and making such possession a felony is urgent and *necessary for the protection of the general public.*

*Id.* (emphases added).

In 1971, the scope of HRS § 134–7(b) was expanded to include all felons. 1971 Haw. Sess. Laws Act 78. The 1971 version of the statute provided in pertinent part:

(b) No person who has been convicted in the State or elsewhere of having committed a felony or of the illegal use and possession or sale of any drug shall own or have in his possession or under his control any firearm or ammunition therefor.

*Id.*, § 1 at 196. The legislative history pertinent to that amendment indicates that the amendment was intended "to amend existing firearms laws so that they will be more effective in deterring and *preventing* the proliferation of *crimes involving the illegal possession and use of firearms* in the State of Hawaii." S. Stand. Comm. Rep. No. 524, in 1971 Senate Journal, at 1036 (emphases added). The legislature found that "registration requirements for lawful possession of firearms ... [would] not appreciably deter or *prevent the continued increase in the number of crimes committed* in the State of Hawaii *by the illegal possession or use of firearms.*" *Id.* (emphases added). Furthermore, the legislature deemed increased penalties for possession of firearms or ammunition by a convicted felon as the "only meaningful method of stopping *gun*

*crimes." Id.* (emphasis added). It is evident, then, that the harm or evil sought to be prevented by HRS § 134–7(b) is the prevention of "gun crimes," and "crimes involving the illegal possession and use of firearms[.]" *Id.*[2]

## III.

Once the purpose behind the statute has been ascertained, a court may determine that the defendant's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[,]" by considering "the nature of the conduct alleged and the nature of the attendant circumstances.[ ]" HRS § 702–236(1)(b).

### A.

The record indicates that Petitioner addressed the nature of her conduct, which was the possession of a single bullet, and all of the relevant attendant circumstances, through the declaration of counsel. In that declaration, Petitioner's counsel "declare[d] under penalty [of] law" that (1) Petitioner was stopped by police officers "for driving erratically[,]" (2) Petitioner was "placed … under arrest for driving under the influence and without a valid driver's license[,]" (3) when Petitioner was searched at the station, a police matron "found a single .38 caliber bullet in the left cup of [Petitioner's] bra[,]" (4) "[Petitioner's] explanation for having the bullet in her possession was that she was going to have it made into a charm for a bracelet[,]" and (5) "[n]o gun was found by [any of the officers or the police matron], nor was any other ammunition, drugs or other contraband found in [Petitioner's] possession or control."[3]

The court considered the declaration and likewise considered the nature of Petitioner's conduct and the attendant circumstances, as indicated by the fact that much of the foregoing was included in its findings and conclusions. The court considered the fact that Petitioner was not found in possession or control of any gun, other ammunition, drugs, or contraband. *See* finding 7. Based on that finding, the court concluded that Petitioner lacked the capacity to fire the bullet and therefore, it could not be used to harm anyone. *See* conclusion 4. The court also considered the fact that Petitioner was arrested for a traffic infraction, and therefore, the use or possession of firearms or ammunition was not a relevant factor in causing Petitioner's arrest.[4] *See* finding 3 and conclusion 1. Ad-

---

2. On appeal, Respondent challenged conclusion 1, arguing that "it is also an important purpose of HRS § 134–7(b) to protect law enforcement officers, correctional officers, jail staff, and detainees from criminal activity involving the use of firearms and ammunition with the assistance of felons convicted of certain crimes." (Emphasis omitted.) Respondent argues that "[Petitioner] was attempting, albeit passively, to bring 'live' ammunition into the HPD main police station holding facility."

The specific focus of criminal liability raised by Respondent is not specifically or expressly noted in HRS § 134–7(b) or in its legislative history. However, Respondent's challenge is plainly subsumed under the broader purpose of HRS § 134–7(b) of protecting the public from crimes involving the illegal use and possession of firearms. *See infra.* The ICA also noted that conclusion 1 was correct to the extent that the court concluded the harm that HRS § 134–7(b) sought to prevent was the commission of crimes by convicted felons by prohibiting their possession or control of firearms and/or ammunition.

3. I respectfully disagree with the majority's assertion that Petitioner's declaration of counsel "omitted many of the relevant attendant circum-

stances." Majority opinion at 331, 235 P.3d at 327. The foregoing indicates Petitioner did in fact address her possession of the single bullet and all of the circumstances attendant to her possession. Furthermore, as discussed *infra,* while the majority takes issues with the fact that "[t]he only evidence offered by [Petitioner] in support of her motion was the declaration of her counsel," *id.,* no one, much less the prosecution, objected to this manner of addressing the nature of Petitioner's conduct and attendant circumstances.

4. The ICA concluded that the court erred in considering the fact that the use of firearms and/or ammunition was not a relevant factor leading to Petitioner's arrest and that no gun, drugs, contraband, or other ammunition was found within Petitioner's possession or control, because in its view, there "is no indication that the legislature intended to limit the possibility of a felon committing a crime with a firearm or ammunition to a specific instance." *Rapozo,* 2009 WL 1090068, at *3. However, a court is required to regard the attendant circumstances and therefore, the court properly considered those matters in support of its conclusion that Petitioner did not actually cause or threaten the harm sought to be prevented by HRS § 134–7.

ditionally, Petitioner's prior felony convictions were not crimes of violence [5] and did not involve the use of firearms or ammunition. *See* finding 8. Inasmuch as "all of the relevant attendant circumstances [must] be considered by [the court]," majority opinion at 337–38, 235 P.3d at 333–34 (citing *Viernes*, 92 Hawai'i at 133, 988 P.2d at 198), the court did just that. Then, in exercising the discretion afforded the court under the de minimis statute, the court determined that Petitioner's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented[.]" HRS § 702–236(1)(b).[6]

### B.

In considering the nature of Petitioner's conduct, the court considered Petitioner's explanation that she was going to have the bullet made into a charm for a bracelet.[7] *See* finding 6. Respondent challenged findings 5 (an "[officer] ... conduct[ed] a more extensive preincarceration search and found a single .38 caliber operable bullet in the left cup of [Petitioner's] bra") and 6 ("[Petitioner's] explanation for possessing the bullet was that she was going to have it made into a charm"), but *only* insofar as the court characterized the item found in Petitioner's possession as a "bullet" as opposed to a "bullet cartridge or

round" or as "ammunition." The ICA decided that the term "bullet" was sufficient to satisfy the meaning of ammunition under § 134–7(b). Because there is no dispute as to the other parts of findings 5 and 6 by Respondent, Petitioner's explanation that she was going to have the bullet made into a charm for a bracelet, is binding on this court.[8] *Kelly*, 111 Hawai'i at 227, 140 P.3d at 1007 (stating that "[a] court finding that is not challenged on appeal is binding on this court") (citations omitted).

Respondent also challenged conclusion 4, insofar as the court found that "the ammunition 'could not be used to harm anyone[.]'" At the hearing on Petitioner's motion to dismiss, Respondent argued that although Petitioner was not found in possession of any gun or other weapon, a bullet can be fired from "any home made gun such as a 'zip gun,' typically made by prisoners [and] can fire a 'bullet' and cause the same harm." While set forth under the court's conclusions, it is evident that the court's determination is a finding as opposed to a conclusion. Such a finding is binding on this court in the absence of a showing that it is clearly erroneous. *See supra.* It is plain the court found that because Petitioner was not in possession of any firearm or other device such as a "zip gun"

---

**5.** To reiterate, Petitioner was previously convicted of Unauthorized Control of Propelled Vehicle, Promoting Dangerous Drugs in the Second Degree, and Theft in the Second Degree.

**6.** While the language of conclusion 4 differs slightly from the language of HRS § 134–7, it is evident that the court determined that based on the nature of Petitioner's conduct and the nature of the attendant circumstances, Petitioner's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented[.]" HRS § 702–236(1)(b).

**7.** *See, e.g., Bullet Jewelry–The Latest Rage!,* http://www.squidoo.com/bulletjewelry (stating that "[b]ullet jewelry has become the latest rage[ ]"). An internet search yields approximately 1,800,-000 results for "bullet jewelry." http://www.google.com/search?hl=en&q=bullet+jewelry&btnG=Search&q=f&aqi=&aql=&oq=&gs_rfai= (last visited June 14, 2010). Additionally, instructions to making live bullets into jewelry or charms can be found online. *See, e.g., The Real Bullet Necklace or Earring,* http://www.instructables.com/id/The-Real-Bullet-Necklace-or-Earring/ (last visited June 16, 2010); *How to Make Bullet Jewelry,*

http://www.ehow.com/how_6019502_make-bullet-jewelry.html (last visited June 16, 2010).

**8.** The majority seemingly acknowledges this in a footnote:

> Aside from [findings] 5 and 6, the [ ] court's [findings] were unchallenged by [Respondent], and are therefore binding on this court. *See* [*Kelly*], 111 Hawai'i at 227, 140 P.3d [at] 1007[ ]. In its Opening Brief to the ICA, [Respondent] challenged [findings] 5 and 6, insofar as they characterized the item in [Petitioner's] possession as a bullet, rather than as a bullet cartridge or round or simply ammunition .... In its memorandum opinion, the ICA rejected [Respondent's] contentions as unfounded because the [ ] court characterized the bullet as operable and it was therefore sufficient to satisfy the meaning of ammunition under HRS § 134–7(b). Given the ICA's resolution of that issue, it does not appear that there is any further dispute that the bullet in [Petitioner's] possession was ammunition within the meaning of HRS § 134–7(b)

Majority opinion at ·334, 235 P.3d at 330 n. 4 (quotation marks omitted).

that could be used to discharge or fire the bullet, the bullet could not be used to harm anyone. While one can imagine ways in which the bullet *could have* been used to cause harm to someone, such "theories," including that of a "zip gun," are speculative at best. The court's finding was based on attendant circumstances relevant to the instant case and therefore, cannot be said to be clearly erroneous.

### C.

Furthermore, as previously discussed, the harm or evil sought to be prevented by HRS § 134–7(b) is "crimes involving the illegal possession and use of firearms[.]" S. Stand. Comm. Rep. No. 524, in 1971 Senate Journal, at 1036. Here, to reiterate, Petitioner was found in possession of a single bullet and lacked the means of firing the bullet. Additionally, no gun, weapon or other means of firing the bullet was ever found in Petitioner's possession or control. *See* findings 5 and 7. Petitioner was pulled over for driving erratically and arrested for driving under the influence and without a driver's license. *See* findings 1 and 3. Thus, she was neither arrested nor charged with any offenses involving the use of a firearm or other weapon. At the time Petitioner was arrested and found to be in possession of the single bullet, she was neither engaged in any acts involving the use of firearms or any other weapon, nor was there any evidence that she was going to embark on any such acts. In light of the foregoing, the court did not abuse its discretion in determining that, based on the attendant circumstances, Petitioner's conduct (possession of the single bullet) did not cause or threaten the harm or evil sought to be prevented by HRS § 134–7 (crimes involving firearms). *See supra.*

Moreover, as stated, a review of the evolution of HRS § 134–7(b) reveals the legislature's concern in part, that the "possession of firearms and/or ammunition by persons having prior record of convictions for *crimes of violence* gives rise to a *reasonable apprehension* that such persons might use such firearms for criminal and violent purposes[.]" 1968 Haw. Sess. Laws Act 19, § 1 at 23

(emphases added). The legislature had at one time determined that "legislation prohibiting the possession or control of firearms by such persons and making such possession a felony [was] urgent and necessary for the protection of the general public." *Id.* Notably, none of Petitioner's prior convictions were for "crimes of violence." [9] *Id.* Accordingly, Petitioner was not in the category of "such persons" on which the legislature had focused as giving rise to a "reasonable apprehension" that the bullet might be used "for violent purposes." *Id.*

At the time she was found in possession of the single bullet, Petitioner's conduct did not actually cause or threaten the harm which the statute was designed to prevent, i.e., crimes involving firearms. The record supports such a conclusion, *even exclusive* of Petitioner's assertion that she intended to make the bullet into a charm for a bracelet, which the majority contends the court failed to determine "was credible." Majority opinion at 346, 235 P.3d at 342.

### D.

There is no dispute that Petitioner's conduct fell within the express language of HRS § 134–7(b). However, the relevant question in this case is whether the court *clearly* abused its discretion in deciding that Petitioner's conduct was de minimis within the meaning of HRS § 702–236, based on the nature of Petitioner's conduct and the attendant circumstances, as set forth in its findings and conclusions. Based on the foregoing, it cannot be said that the court's "judgment call," *Viernes,* 92 Hawai'i at 133, 988 P.2d at 198, that Petitioner's possession in this case "[d]id not *actually* cause or threaten the harm or evil sought to be prevented by the law defining the offense," HRS § 134–7(1)(b) (emphasis added), was clearly wrong.

While one may disagree with the court's ultimate decision, where matters are left to the sound discretion of the trial court, the appellate court must exercise judicial restraint and may not overturn the court's decision in the absence of a clear abuse of

9. *See* finding 8.

discretion. *Hironaka,* 99 Hawai'i at 204, 53 P.3d at 812 (stating that because the authority to dismiss a prosecution under HRS § 702–236 "rests in the sound discretion of the trial court[,]" the supreme court "will reverse the trial court only if the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant"); *Viernes,* 92 Hawai'i at 133, 988 P.2d at 198 (stating that the court's decision "is reviewed for abuse of discretion" and will be reversed "only if the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to a substantial detriment of a party litigant") (citations omitted); *see also State v. Wallace,* 80 Hawai'i 382, 406, 910 P.2d 695, 719 (1996) (stating that matters that rest " 'within the sound discretion of the trial court . . . will not be overturned unless there is a clear abuse of discretion' ") (quoting *State v. Maelega,* 80 Hawai'i 172, 180, 907 P.2d 758, 766 (1995) (internal citation omitted)); *cf. State v. Loa,* 83 Hawai'i 335, 348, 926 P.2d 1258, 1271 (1996) (" 'The scope and extent of cross and recross-examination of a witness is within the sound discretion of the trial judge. Under this standard, we will not disturb the trial court's exercise of its discretion unless it is

clearly abused.' " (Quoting *State v. Jackson,* 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996).)). Thus, based on the matters relied on by the court, the court cannot be said to have "*clearly* exceeded the bounds of reason or disregarded rules or principles of law or practice[.]" *Hironaka,* 99 Hawai'i at 204, 53 P.3d at 812 (emphasis added).

## IV.

■ On the other hand, the majority argues that the court abused its discretion in dismissing Count I because (1) Petitioner's conduct did in fact threaten the harm or evil sought to be prevented by HRS § 134–7(b) and (2) Petitioner failed to carry her burden of demonstrating that her possession of a bullet was too trivial to warrant the condemnation of conviction.[10]

### A.

With respect to its first argument, the majority cites to several cases in support of the undisputed proposition that "[a]s with all efforts to determine legislative intent, that inquiry relies primarily on the plain language of the statute." *See* majority opinion at 338,

---

**10.** The majority raises this although Petitioner did not argue it. It is briefly noted that if in fact Petitioner's conduct did "actually cause or threaten the harm or evil sought to be prevented by the law defining the offense[,]" Petitioner's conduct "did so only to an extent too trivial to warrant the condemnation of conviction[.]" HRS § 702–236. *State v. Akina,* 73 Haw. 75, 828 P.2d 269 (1992), is instructive. In *Akina,* Sue, a ward of the State, had run away from her foster parents at the time she met the defendant at a beach park. *Id.* at 76, 828 P.2d at 270. The defendant allowed her to stay in his home for approximately two weeks, during which time he called Sue's foster parents to inform them of her whereabouts. *Id.* Sue returned to her foster parents upon the defendant's request but again ran away and returned to the defendant. *Id.* at 76–77, 828 P.2d at 270–71. The defendant drove her back to her foster parents at which time they informed him that Sue was a runaway and that it was a criminal offense to assist runaways. *Id.* Thereafter, the defendant again agreed to allow her to stay in his home for another week. *Id.* at 77, 828 P.2d at 271.

The defendant was subsequently convicted of custodial interference. *Id.* at 76, 828 P.2d at 270. On appeal, the defendant argued that the court had abused its discretion in failing to dis-

miss the case as de minimis under HRS § 702–236(1)(b). *Id.* This court held that the court abused its discretion in failing to dismiss the case as de minimis under HRS § 702–236(1)(b) because the defendant's conduct was too trivial to warrant the condemnation of conviction. *Id.* at 77, 828 P.2d at 271. It was reasoned that by the time the defendant "came on the scene, there was little he could do to worsen Sue's relationship with her custodial parents . . . [because] she had already run away from [her parents] several times before, and [her parents] themselves admitted that they had no control over her." *Id.* at 79, 828 P.2d at 272. Thus, it was [therefore] "*unlikely* that his actions altered the existing custodial relationship at all." *Id.* (emphasis added).

Here, based on the circumstances surrounding Petitioner's arrest, it was also *unlikely* that Petitioner actually caused the harm the statute was intended to protect against. As recounted, Petitioner lacked the means of firing the single bullet and there was no other indication that she intended to use the bullet to cause the harm which the statute was designed to protect against (crimes involving firearms against the public). In that regard, Petitioner's conduct can be said to have caused the harm, if at all, to an extent too trivial to warrant the condemnation of conviction.

235 P.3d at 334 (citing *Kupihea,* 98 Hawai'i at 206, 46 P.3d at 508; *Akina,* 73 Haw. at 78, 828 P.2d at 271; *Ornellas,* 79 Hawai'i at 423, 903 P.2d at 728). The majority states that it "disagree[s] with the ... assertion that 'the legislative intent cannot be discerned by looking directly to the language of the statute itself.'" *Id.* at 338, 235 P.3d at 334 (quoting dissenting opinion at 357, 235 P.3d at 353).

The intent of the legislature can often be discerned from the plain language of the statute itself. However, in the instant case, the harm or evil sought to be prevented by HRS § 134–7(b) is not clear from the plain language. Despite its protestation, the majority would not seem to disagree. The majority states that "[t]he purpose of the prohibition in HRS § 134–7(b) is to reduce the risk that persons convicted of certain crimes will commit further crimes using firearms[.]" *Id.* at 339, 235 P.3d at 335. That intent cannot be gleaned from the plain language of the statute itself. For that reason, the majority itself resorts to legislative history. *See id.* at 341, 235 P.3d at 337 (stating that "[t]he plain language of the statute *and its legislative history* support the conclusion that" Petitioner's conduct did actually cause or threaten the harm or evil sought to be prevented by the statute) (emphasis added). The foregoing thus contradicts the majority's "disagree[ment] ... that 'the legislative intent cannot be discerned by looking directly to the language of the statute itself.'" *Id.* at 338, 235 P.3d at 334. As acknowledged by the majority, in the instant case, the prohibition of possession of firearms or ammunition serves as a means of preventing some other harm or evil. That harm or evil is not evident from the language of the statute itself.

Furthermore, the cases to which the majority cites are inapplicable. Preliminarily, inasmuch as *Akina* and *Ornellas* did not involve possession crimes, they are not controlling. *Kupihea,* which did involve a possession statute, is inapplicable. In that case, the defendant argued that the court plainly erred in failing to *sua sponte* dismiss the paraphernalia charge as de minimis under HRS § 702–236 "where the items were everyday household items not intended or designed for use as drug paraphernalia." 98 Hawai'i at 206, 46 P.3d at 508 (brackets omitted). Although the defendant raised a de minimis argument, it is apparent that the defendant's challenge more specifically involved construction of the term "drug paraphernalia."

This court declined to rely on legislative history referring to "the prevalence of so-called 'head shops' selling pipes made for marijuana, for cocaine, for heroin, and all the assorted paraphernalia that accompany that[,]" *id.,* (internal quotation marks, ellipses, brackets, and citation omitted), because "the broad definition of drug paraphernalia and the multiple examples of such contraband enumerated in [the statute] weigh[ed] against [the defendant's] contention that the ordinary nature of the containers possessed ... did not involve the harm or evil sought to be prevented under [the statute] or amounted to extenuations that would not have been envisioned by the legislature[,]" *id.* In construing the phrase "drug paraphernalia," *Kupihea* looked only to the plain language of the statute in construing that phrase. Inasmuch as the instant case does not involve statutory construction, as indicated, the legislative intent cannot be discerned by looking directly to the language of the statute itself.

Likewise, in *Akina,* 73 Haw. at 78, 828 P.2d at 271, the defendant, who had been convicted of custodial interference, asserted that the statute was intended to prevent "child snatching, that is, interference of custody awarded upon divorce." The plain language of the statute however, prohibited one from "knowingly tak[ing] or entic[ing] a person less than eighteen years old from his lawful custodian, knowing that he has no right to do so." *Id.* (quoting HRS § 707–727). This court explained that the plain language of the statute "[made] it a crime to knowingly interfere with lawful custody of a child below the age of eighteen and is clearly intended to protect the interests of the minor and that of the minor's lawful custodian in the parent-child relationship." *Id.* at 79, 828 P.2d at 272. Thus, *Akina* concluded that custodial interference "was not limited to custody arising from divorce[.]" *Id.* Again, in *Akina,* this court consulted only the plain language of the statute in rejecting the defendant's narrow interpretation of the stat-

ute. In the instant case, inasmuch as the determination of the harm or evil sought to be prevented by the prohibition set forth under HRS § 134–7(b) is not discernable from the statute itself, this court is not faced with an assertion by Petitioner that the statute should be narrowly construed to exclude her from the scope of the statute, as asserted by the defendants in *Akina* and *Kupihea.* Rather, Petitioner contends that her conduct in the instant case did not actually cause or threaten the harm which the statute was designed to prevent, i.e., gun crimes.

Similarly, in *Ornellas,* the ICA's determination of the purpose of the statute essentially tracked the language of the statute itself. The ICA concluded that the purpose of the statute entitled "Abuse of family or household members; penalty," was to "prevent violence between those persons denoted as 'household members.'" 79 Hawai'i at 423, 903 P.2d at 728. To reiterate, HRS § 134–7(b) states nothing about the prevention of gun crimes or "reduc[ing] the risk that persons convicted of certain crimes will commit further crimes using firearms[.]" Majority opinion at 339, 235 P.3d at 335. Contrary to the majority's argument, unlike in the foregoing cases, the harm or evil sought to be prevented by HRS § 134–7(b) cannot be determined from the plain language of the statute. *See* majority opinion at 338, 235 P.3d at 334.

### B.

As stated, the majority concludes that "[t]he purpose of the prohibition in HRS § 134–7(b) is to reduce the risk that persons convicted of certain crimes will commit further crimes using firearms[,]" and the fact that "[t]he statutory language explicitly proscribes the possession of '*any* firearm *or* ammunition' by a person convicted of a felony[,] ... reflects the determination by the legislature that the possession of firearms or ammunition by certain categories of people raises an unacceptable risk that those items will be used for unlawful purposes." Majori-

ty opinion at 339–40, 235 P.3d at 335–36 (emphases in original) (quoting HRS § 134–7(b)).

First, it is *undisputed* that Petitioner's conduct violated the statute as the majority poses it. The relevant question is not whether Petitioner's conduct falls within the language of HRS § 134–7(b), which is not in question for purposes of HRS § 702–236, but rather, whether the circumstances satisfied the requirements of HRS § 702–236.

Second, the legislative history to which the majority cites, precisely states, as noted before, that because "the possession of firearms and/or ammunition *by persons having a prior record of convictions for violent crimes* gives rise to a *reasonable apprehension* that *such persons* might use such firearms for criminal and violent purposes," the legislature deemed "*making such possession a felony [as] urgent and necessary for protection of the general public.*" 1968 Haw. Sess. Laws Act 19, § 1 at 23 (emphases added). The legislative history upon which the majority relies indicates that the legislature was manifestly concerned with felons, whose possession of firearms or ammunition the legislature deemed to give rise to a "reasonable apprehension" that such firearms or ammunition would be used for "criminal and violent purposes." *Id.*

Additionally, the 1971 amendment of HRS § 134–7(b) to, *inter alia,* expand the scope of the prohibition to include all felons, was intended to prevent "*gun* crimes" and "crimes involving the illegal possession and use of *firearms*[.]" S. Stand. Comm. Rep. No. 524, in 1971 Senate Journal, at 1036 (emphases added); *see also* majority opinion at 339, 235 P.3d at 335 (stating that "[t]he purpose of the prohibition in HRS § 134–7(b) is to reduce the risk that persons convicted of certain crimes will commit further crimes using firearms"). In that light, and considering all of the relevant attendant circumstances, including the fact that Petitioner lacked the means of firing the bullet, Petitioner's conduct did not give rise to a "reasonable apprehension" that the single bullet would be used for "criminal and violent purposes." [11] S. Stand.

---

11. Contrary to the majority's contention, this opinion does not find Petitioner's seeming lack of culpability to be "dispositive." Majority opinion

at 342, 235 P.3d at 338. To the contrary, it is that factor, considered with all of the other factors submitted to and considered by the court,

Comm. Rep. No. 524, in 1971 Senate Journal, at 1036. Thus, it cannot be said to that the court abused its discretion in determining that Petitioner did not actually cause or threaten that harm which HRS § 134-7 seeks to prevent.[12]

Third, HRS § 702-236 does not preclude or limit its application to any statute, much less, HRS § 134-7(b). The majority asserts that the "evolution [of the statute] reflects a steady expansion of the scope of the statute, culminating in the decision in 1971 to prohibit 'all' felons from possessing firearms or ammunition." Majority opinion at 343, 235 P.3d at 339.[13] The majority's position is seemingly that one's status (as a felon), coupled with the possession of a firearm or ammunition, *ipso facto* disqualifies him or her from dispensation under the first prong of HRS § 702-236(1)(b). *Id.* at 341, 235 P.3d at 337. But nothing in the language of the legislative history of HRS § 702-236(1)(b) indicates that a violation of HRS § 134-7(b) could never be de minimis under the first prong. Contrary to the majority's assertion that the plain language of HRS § 134-7 does not support a finding that Petitioner's possession did not actually cause or threaten the harm of evil sought to be prevented by that statute, the plain language of HRS § 134-7 *neither* precludes the application of HRS § 702-236 *nor* limits the application of HRS § 702-236(1)(b) to the second prong. Indeed, the majority acknowledges that Petitioner's possession of a single bullet "may still constitute a de minimis infraction under HRS § 702-236(1)(b) if it 'did not actually cause or threaten the harm or evil sought to be prevented[.]'" *Id.* at 336, 235 P.3d at 332 (quoting *Viernes*, 92 Hawai'i at 134, 988 P.2d at 199). The majority's acknowledgment of that fact undermines its assertion that the possession of any ammunition disqualifies Petitioner from de minimis consideration under the first prong of HRS § 702-236(1)(b). Ad-

ditionally, this view has already been precluded by *Viernes*.

In *Viernes*, 92 Hawai'i at 130, 988 P.2d at 195, the prosecution argued "that the circuit court erroneously dismissed the charge against [the defendant] of promoting a dangerous drug in the third degree, pursuant to HRS § 712-1243 (1993 & Supp.1998)." That section provided in pertinent part that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount." *Id.* at 130 n. 1, 988 P.2d at 195 n. 1. This court rejected the prosecution's argument that the court erroneously dismissed that charge against the defendant because "the quantity of methamphetamine possessed by [the defendant] was infinitesimal and unusable as a narcotic, and *was thereby incapable of causing or threatening the harms sought to be prevented by HRS § 712-1243*[.]" *Id.* at 133, 988 P.2d at 198. Notwithstanding the statute's clear prohibition against the possession of "*any* dangerous drug in *any* amount[,]" HRS § 712-1243 (emphases added), this court explained that under HRS § 702-236, an offense of the statute "may be *de minimis* where it 'did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense.'" *Id.* at 134, 988 P.2d at 199 (brackets omitted). The *Viernes* court stated that "[u]nder certain circumstances, this may, . . . trump the 'any amount' requirement of HRS § 712-1243." *Id.* (citation omitted).

The *Viernes* court went on to determine that "[t]he legislative purpose of the penal statutes relating to drugs and intoxicating compounds—including HRS § 712-1243—is to respond to 'abuse and social harm.'" *Id.* (quoting H. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040). It was noted that "[t]he legislature increased the penalties attendant to the possession or distribution of methamphetamines 'to counter increased property and violent crimes.'" *Id.* (quoting 1996 Haw. Sess. Laws Act 308, at 970). Thus, this court concluded that "if the quantity of a controlled substance is so minuscule

that supports upholding the court's discretion in the instant case.

**12.** The majority does not indicate why, other than the fact that she was a felon, Petitioner was the "type" of felon with which the legislature was concerned.

**13.** Again, the "steady expansion" argument undermines the majority's assertion that in the instant case, the intent of the legislature can be ascertained simply by looking directly at the stat-

that it cannot be sold or used in such a way as to have any discernible effect on the human body, it follows that the drug cannot lead to abuse, social harm, or property and violent crimes." *Id.* To reiterate, *Viernes* indicates that the fact that HRS § 134–7(b) prohibits the possession of *"any* firearm or ammunition therefor[,]" does not *ipso facto* disqualify a violation of the statute from de minimis review under the first prong of HRS § 702–236.

Fourth, I respectfully disagree with the majority's assertion that because Petitioner had a prior felony conviction for third-degree promotion of a dangerous drug, she "fits squarely within [the] category of offenders that was of *particular* concern to the legislature." Majority opinion at 343, 235 P.3d at 339 (emphasis added). The 1968 legislative history to which the majority cites in support of this contention specifically referenced "persons convicted of crimes involving the possession ... of depressant or stimulant drugs" because at that time, the statute specifically prohibited persons convicted of *"possession ...* of narcotics, or any depressant or stimulant drug," from possessing or controlling any firearm or ammunition. *See* 1968 Haw. Sess. Laws Act 19, § 1 at 23–24 (emphasis added). Most tellingly, as acknowledged by the majority, "the legislature subsequently amended HRS § 134–7(b) in 1980 *'to remove from the scope of section 134–7 those who have been convicted of the use or possession of drugs, unless such conviction is a felony[.]'* " Majority opinion at 343, 235 P.3d at 339 (quoting Conf. Comm. Rep. No. 30–80, in 1980 Senate Journal, at 955; 1980 Haw. Sess. Law Act 233, § 1 at 411) (emphasis added) (brackets in original). Therefore, the legislative history to which the majority cites, regarding the legislature's concern with those convicted of mere possession of drugs, was nullified.

The statute under which Petitioner was convicted of promoting a dangerous drug in the third degree states in pertinent part that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly *possesses* any dangerous drug in any amount." HRS § 712–1243(1)

ute. *See* majority opinion at 338, 235 P.3d at 334.

(Supp.2004) (emphasis added). To reiterate, HRS § 134–7(b) presently reads:

> (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State of elsewhere of having committed a felony, or any crime of violence, or an *illegal sale of any drug* shall own, possess, or control any firearm or ammunition therefor.

(Emphasis added.) Hence, contrary to the majority's position, with regard to offenses involving narcotics, HRS § 134–7(b) specifically references only those who have been convicted of an "illegal *sale* of any drug[,]" and not those convicted of mere possession. *Id.* (emphasis added). The majority cannot fairly rely on legislative history pertaining to a section of HRS § 134–7 that was subsequently "remove[d]."

In a seeming attempt to prove that the above-stated legislative history still applies to the current version of HRS § 134–7 applicable in the instant case, the majority asserts that because the legislature indicated that HRS § 134–7 would not apply to those convicted of mere possession of drugs, *"unless such conviction is a felony[,]'* " the legislature "made clear its intention that the *'use or possession* of prohibited drugs[,]' where such use or possession results in a felony conviction, would remain within the prohibitions of HRS § 134–7(b)." Majority opinion at 343, 235 P.3d at 339 (quoting Conf. Comm. Rep. No. 30–80, in 1980 Senate Journal, at 955; 1980 Haw. Sess. Laws Act 233, § 1 at 411) (brackets in original) (emphases added). That rationale is clearly tautological. Persons convicted of possession or use of drugs, where such conviction is a felony, fall within the scope of HRS § 134–7 not because the legislature was specifically concerned with such persons, but because HRS § 134–7 prohibits all felons, whether or not the conviction is drug-related, from possessing ammunition or firearms. In any event, with respect to drug related offenses, the scope of HRS § 134–7(b) expressly refers only to the "illegal sale of any drug[.]" Thus, that legislative history does not apply to the instant case.[14]

14. Assuming *arguendo,* that because HRS § 134–7 encompasses persons convicted of felony drug

## V.

With respect to its second argument, although the court concluded that Petitioner's conduct did not actually cause or threaten the harm sought to be prevented by HRS § 134–7(b), the majority also argues that Petitioner failed to establish that her conduct "was too trivial to warrant the condemnation of conviction[.]" Majority opinion at 343, 235 P.3d at 339. In support of this argument, the majority contends that (a) Petitioner addressed her alleged conduct solely through the declaration of counsel, *id.* at 345, 235 P.3d at 341, (b) Petitioner did not explain certain matters the majority raises *sua sponte* on certiorari, *id.; see infra*, (c) the court did not enter a finding regarding whether Petitioner's explanation for possessing the bullet was credible, *id.* at 346, 235 P.3d at 342, and (d) certain "factors weigh against granting the motion[,]" *id.* at 349, 235 P.3d at 345.

### A.

As to contention (a), the majority asserts that "[t]he only evidence offered by [Petitioner] in support of her motion was the declaration of her counsel, which omitted many of the relevant attendant circumstances." *Id.* at 331, 235 P.3d at 327. The majority further states that Petitioner "offered no further evidence or testimony to corroborate

possession, the legislative history upon which the majority relies remains applicable, Petitioner does not fall squarely within the category of persons with which the legislature was concerned. The legislative history cited by the majority states that persons convicted of crimes involving the possession or sale of depressant or stimulant drugs "are particularly dangerous when they are apprehended or when they are under the influence of narcotics or drugs, and must therefore be prevented from the possession of *firearms* for the public interest." 1968 Haw. Sess. Laws Act 19, § 1 at 23 (emphasis added). Thus, that legislative history reveals the legislature's concern specifically with the possession of firearms. Even if that language were to continue to apply to HRS § 134–7, the legislature felt that persons convicted of possession of drugs must be specifically prohibited from possessing *firearms* and in the instant case, Petitioner possessed a single bullet without the capacity to fire it. No firearm or other weapon was found within her control. ·

**15.** In further support of its argument that Petitioner failed to corroborate her explanation, the majority cites to *State v. Carmichael*, 99 Hawai'i

that asserted explanation." [15] *Id.* at 345, 235 P.3d at 341. First, there is no requirement under HRS § 134–7(b) that a defendant address her conduct in a particular manner. Second, there is no indication that Respondent challenged the fact that Petitioner addressed her conduct solely through her counsel's declaration. If Respondent wanted to challenge that procedure, it was obligated to do so in its memorandum in opposition to the motion or at the hearing on the motion. *State v. Moses*, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]") (Citations omitted.); *State v. Hoglund*, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal." (Citing *State v. Cummings*, 49 Haw. 522, 423 P.2d 438 (1967).)); *State v. Rodrigues*, 67 Haw. 496, 498, 692 P.2d 1156, 1158 (1985) (holding that the State, "propound[ing] only the theory of consent to the search" at the trial level, had waived the theories "of exigency and a 'good faith' exception" because "[i]t is a generally accepted rule that issues not raised at the trial level will not be considered on appeal" (citation omitted)). Because Respondent did not raise

75, 53 P.3d 214 (2002). Majority opinion at 344–45, 235 P.3d at 340–41. In *Carmichael*, after the defendant Carmichael had been arrested for driving under the influence, he was found to be in possession of a glass pipe containing a white crystalline substance and a brown, burnt substance, two metal scrapers, a small plastic straw and several ziplock bags containing a light rock residue. *Id.* at 76, 53 P.3d at 215. Carmichael was charged, *inter alia*, with promoting a dangerous drug in the third degree, which he subsequently moved to dismiss that charge as de minimis pursuant to HRS § 702–236. *Id.* at 77, 53 P.3d at 216.

The majority contends that this court observed in the plurality opinion that the defendant "must 'adduce evidence regarding both the conduct alleged and the attendant circumstances in order to support a finding that the alleged conduct was de minimis.'" Majority opinion at 345, 235 P.3d at 341 (quoting *Carmichael*, 99 Hawai'i at 80, 53 P.3d at 219). The plurality found that Carmichael failed to do so. *Carmichael* is manifestly inapposite inasmuch as the court in the instant case set forth detailed findings and conclusions recognizing both the conduct alleged and the attendant circumstances in support of the dismissal.

that objection, the declaration cannot be viably or fairly challenged on appeal or by the majority.

Third, to reiterate, the record indicates that Petitioner did in fact address both the nature of her conduct and the nature of the attendant circumstances through the declaration of counsel. It is undisputed that the court considered this evidence and included them in its findings and conclusions. Thus, Petitioner obviously addressed the attendant circumstances surrounding her possession of the bullet. HRS § 702–236 does not require the defendant to address every conceivable question or circumstance, which the court of appeals conjures up post-hearing. Undoubtedly an infinite number of hypothetical and speculative questions could be posed. But in the instant case, the court considered all of the relevant and material circumstances attendant to Petitioner's possession. The majority does not explain why this amounts to an abuse of discretion.

### B.

### 1.

Apparently, as to contention (b), the majority would have had Petitioner explain (1) "why, if her purpose in possessing the bullet was to make it into a charm for a bracelet, she was carrying it with her while driving at 1:14 a.m. in Waikiki[,]" (2) "why, if her purpose was benign, she concealed the bullet in

an intimate part of her clothing[,]" and (3) "where and when she obtained the bullet, and where she was traveling from and going to when she was stopped by the police." Majority opinion at 345, 235 P.3d at 341. Notably, none of these questions were ever raised at the hearing or otherwise, much less by Respondent. Nevertheless, the majority faults the court for failing to consider all of the questions which *it* finds should have been addressed. However, the majority's attempt to point to questions *it feels* should have been answered is purely makeweight; a seeming attempt to support its assertion that Petitioner failed to present to the court, what *it deems* to be the *relevant* attendant circumstances,[16] thus cementing its usurpation of the court's discretion. The majority does not address how those questions are relevant or materially bear on the issue of whether, at the time Petitioner possessed the single bullet, she "actually cause[d] or threaten[ed] the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]" HRS § 702–236.[17]

### 2.

Additionally, as to contention (b), the fact that Petitioner had the single bullet in her brasserie while driving in Waikiki at 1:14 a.m. is not inconsistent with her assertion

16. The majority cites to *Carmichael*, noting that this court has affirmed the court's denial of motions to dismiss a charge as de minimis where "the defendant failed to address the attendant circumstances that [this court] considered to be relevant." Majority opinion at 345–46, 235 P.3d at 341–42 n. 12 (citing *Carmichael*, 99 Hawai'i at 80, 53 P.3d at 219). Such reliance is misplaced. In *Carmichael*, the plurality noted that "both at the hearing and on appeal, the defense focused on whether the amount of the drug possessed constituted a useable amount." 99 Hawai'i at 80, 53 P.3d at 219. This court said that the defense failed to adduce any evidence or present any argument with respect to other attendant circumstances. *Id.*

Likewise, in *State v. Fukagawa*, 100 Hawai'i 498, 507, 60 P.3d 899, 908 (2002), this court noted that "the defense focused solely upon the amount of methamphetamine possessed and presented neither testimony nor other evidence regarding the circumstances attendant to [the defendant's] possession of drug paraphernalia and the substance containing methamphetamine."

However, in the instant case, Petitioner did present evidence "attendant to [her] possession[.]" Unlike *Carmichael*, Petitioner did not focus on a single attendant circumstance. As previously noted, Petitioner addressed and the court considered her possession and all of the relevant attendant circumstances surrounding her possession. Thus, those cases are plainly inapposite.

17. Inasmuch as the majority fails to point to any attendant circumstance that bears on the de minimis analysis, the majority's assertion that its decision "[does] not preclude the possibility that [Petitioner] could carry [her] burden at a later stage of the proceedings in the event a more fully developed record supports dismissal[,]" is illusory. Majority opinion at 331, 235 P.3d at 327. The majority fails to indicate in any meaningful way, what more "a more fully developed record" would require. The majority references only a list of questions it has created on certiorari.

that she *intended* to make the bullet into a charm for a bracelet i.e. "she was going to have [the bullet] made into a charm for a bracelet." Finding 6. *See supra* note 7. Moreover, those facts are plainly irrelevant. If Petitioner had been driving around with the bullet at 10 a.m. and had kept it in her purse as opposed to her brassiere, would it be more likely that such possession "[d]id not actually cause or threaten the harm or evil sought to be prevented by [HRS § 134–7] or did so only to an extent too trivial to warrant the condemnation of conviction[?]" HRS § 702–236. The majority does not explain how, if answered, those questions are relevant in the instant case. Likewise, where she obtained the bullet and where she was coming from and going to, would not affect the court's determination that in light of all of the circumstances presented to the court, including the fact that Petitioner lacked the ability to fire or otherwise discharge the bullet, the possession of the single bullet did not actually "create the danger the statute was designed to prevent[,]" finding 4, i.e., the use of firearms against the public. *See supra.*

With all due respect, the foregoing questions which the majority poses appear out of thin air. These questions were not raised by any party in the trial proceedings or on appeal. They are not grounded in any matter of record even hinting of relevance or materiality. In my opinion, this clearly invades the province of the court and disregards the standard of review in de minimis cases.

### C.

As to contention (c), the majority notes that, in its findings, the court "did not determine whether [Petitioner's] asserted explanation [set forth in finding 6] was credible." Majority opinion at 346, 235 P.3d at 342. However, Respondent did not challenge the credibility of Petitioner's explanation in its memorandum in opposition to Petitioner's motion to dismiss or at the hearing on the motion. Respondent challenged that finding

only insofar as the court characterized the item found in Petitioner's possession as a "bullet" as opposed to a "bullet cartridge or round" or as "ammunition." With the ICA having resolved that issue, Petitioner's explanation is binding on this court. *See supra.* Again, because Respondent failed to raise this "credibility" objection at the hearing, it cannot be viably or fairly challenged on appeal or relied on by the majority. *Moses,* 102 Hawai'i at 456, 77 P.3d at 947; *Hoglund,* 71 Haw. at 150, 785 P.2d at 1313; *Rodrigues,* 67 Haw. at 498, 692 P.2d at 1158.

Despite the otherwise binding nature of finding 6, the majority maintains that, where a "defendant's explanation for his or her conduct is central to [the] inquiry, it is not sufficient to simply repeat the defendant's explanation without making a finding as to its credibility[.]" Majority opinion at 347, 235 P.3d at 343. Assuming, *arguendo,* the centrality of Petitioner's explanation, Respondent did not challenge the credibility of Petitioner's explanation in its memorandum in opposition to Petitioner's motion to dismiss or at the hearing on the motion. In support of this proposition, the majority cites *State v. Balanza,* 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000), to the effect that "before a trial court can address whether an offense constitutes a de minimis infraction, the court must make factual determinations regarding the circumstances of the offense." *See* majority opinion at 347, 235 P.3d at 343 (quoting *Balanza,* 93 Hawai'i at 283, 1 P.3d at 285).[18] However, the foregoing quote by the majority makes apparent that *Balanza* does not require the court to make an independent finding on credibility. Indeed, *Balanza* says nothing about "credibility." Neither the facts nor outcome in *Balanza* turned on the issue of credibility. Rather, *Balanza* refers only to the factual determinations the court must make with regard to the circumstances of the offense. The court clearly did that in this case.

The majority further maintains that "[Respondent's] opposition to [Petitioner's] motion clearly disputed [Petitioner's] characterization of the relevant events, by arguing

18. It is worth noting that the quoted language appears in *Balanza* under the heading "Standard of Review," after which the court stated that "these findings of fact are reviewed under the clearly erroneous standard." *Balanza,* 93 Hawai'i at 283, 1 P.3d at 285 (citation omitted).

that '[Petitioner's] possession of ammunition that is capable of being fired, considered with all of the other attendant circumstances, shows that [Petitioner's] conduct was causing or threatening the harm or evil sought to be prevented by the law defining the offense." Majority opinion at 346, 235 P.3d at 342 (emphasis omitted). As noted before, however, the majority acknowledges that Respondent challenged finding 6 *only* insofar as it characterized the item found within Petitioner's possession as a "bullet," *see id.* at 334, 235 P.3d at 330 n. 4, and thus, not as to the credibility of the explanation. Moreover, to assert that a general and indirect challenge to *all* the attendant circumstances preserves a party's right to challenge a specific finding on appeal improperly circumvents the established "general rule [that] if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]" *Moses*, 102 Hawai'i at 456, 77 P.3d at 947; *Hoglund*, 71 Haw. at 150, 785 P.2d at 1313; *Rodrigues*, 67 Haw. at 498, 692 P.2d at 1158.

The majority further declares that Respondent "challenged [the court's conclusion] 6," by arguing on appeal "that there was no 'determination of credibility with regard to [Petitioner's] explanation'" and therefore, rendered the credibility issue "properly before this court." Majority opinion at 347, 235 P.3d at 343 (brackets omitted). But nowhere in the prosecution's oral or written submissions to the court is the term "credibility" even mentioned, much less any argument made in that regard. As recounted *supra*, that argument thus cannot be raised on appeal. Moreover, an argument supporting a challenge to a conclusion on appeal does not amount to a challenge to a finding. To the contrary, inasmuch as findings are the underpinnings of the conclusions, a successful attack on a finding may invalidate one or more conclusion. *See Wisdom v. Pflueger*, 4 Haw.App. 455, 459, 667 P.2d 844, 848 (App. 1983). "However, *an attack on a conclusion which is supported by a finding is not an attack on that finding. If a finding is not properly attacked, it is binding* [.]" *Id.* (emphasis added).

The majority asserts that *Pflueger* also stated that "if a finding is not properly attacked, any conclusion which follows from it and is a correct statement of the law is valid." Majority opinion at 347, 235 P.3d at 343 (quoting *Pflueger*, 4 Haw.App. at 459, 667 P.2d at 848) (internal quotation marks, brackets, and ellipsis omitted). According to the majority, because finding 6 "merely repeats [Petitioner's] explanation, ... [conclusion] 6 does not 'follow from' [finding] 6." *Id.* (brackets omitted). That does not change the fact that a challenge to a conclusion (conclusion 6) does not amount to a challenge to a finding (finding 6). Even assuming *arguendo*, conclusion 6 did not follow from finding 6, because finding 6 was not challenged by Respondent in its memorandum in opposition to Petitioner's motion to dismiss or at the hearing, it is binding. *Moses*, 102 Hawai'i at 456, 77 P.3d at 947; *Hoglund*, 71 Haw. at 150, 785 P.2d at 1313; *Rodrigues*, 67 Haw. at 498, 692 P.2d at 1158. The language from *Pflueger* to which the majority cites has no bearing on that proposition.

Finally, the majority states that "although [the court] accurately repeated the explanation[,] ... it did not find that it was in fact true." Majority opinion at 346, 235 P.3d at 342 (emphasis omitted). The majority does not point to any authority suggesting a finding is not binding, or that a conclusion cannot "follow[ ] from" a finding, simply because the court failed to expressly state that an explanation is true. *Id.* at 346–47, 235 P.3d at 342–43 (quoting *Pflueger*, 4 Haw.App. at 459, 667 P.2d at 848). However, it can be inferred from both the inclusion of Petitioner's explanation in its findings and in ultimately granting Petitioner's de minimis motion, that the court made an assessment as to Petitioner's explanation. The majority disagrees because in the majority's view, "the wording of [finding] 6 suggests that the [ ] court *reserved* decision on the credibility of [Petitioner's] proffered explanation." *Id.* at 346, 235 P.3d at 342 n.13 (emphasis added).

The court could not have "reserved" an evaluation of the explanation inasmuch as it was one of the attendant circumstances. Thus, finding 6 had to have been made and was properly made a part of the court's findings. While the majority contends that "[i]t is not surprising that [the court] failed to make a finding on the credibility of the

explanation, since there was insufficient information in the record to enable it to do so[,]" majority opinion at 346, 235 P.3d at 342, on the face of the decision, Petitioner's explanation was considered and entered into the court's findings for whatever weight the court in its discretion chose to give it. By dint of its decision, this explanation was weighed by the court in conjunction with all other circumstances. Resting on the evaluation of the attendant circumstances as a whole, the court plainly arrived at its ultimate conclusion.

Thus, in any event, based on the circumstances set forth in its written decision, the court exercised its discretion in favor of dismissal.[19] It is not within the province of this court to second-guess the court's determination on that issue. *Eastman*, 81 Hawai'i at 139, 913 P.2d at 65 ("An appellate court will not pass upon the trial judge's decisions with respect to the *credibility of witnesses*, . . . because this is the province of the trial judge.") (Emphasis added.)

The majority argues alternatively that even if Petitioner's explanation is accepted at face value, it does not establish that her conduct was de minimis because "it does not state that [Petitioner] intended to render the bullet inoperable in doing so." Majority opinion at 347, 235 P.3d at 343. While it is difficult to see how one could make a bullet into a charm for a bracelet without rendering it inoperable,[20] it must be observed again that Petitioner's explanation in finding 6 is binding on this court. There is nothing in the record to indicate that the court's findings as to Petitioner's explanation and the surrounding circumstances were clearly erroneous. Hence, such findings circumscribe this court's review.

Moreover, the majority appears to single out Petitioner's explanation regarding her possession of the single bullet as opposed to a consideration of all of the attendant circumstances considered by the court as a whole. It is axiomatic that "[a]n appellate court will not pass upon the trial judge's decisions with respect to . . . the *weight of* the evidence, because this is the province of the trial judge." *Eastman*, 81 Hawai'i at 139, 913 P.2d at 65 (emphasis added). By placing greater weight upon this one factor as opposed to the other factors incorporated in the findings, the majority itself weighs the evidence and improperly invades the province of the court.

### D.

As to contention (d), the majority contends that both the fact that "possession of ammunition . . . is a class B felony," and the fact that it is a felony "involving conduct that has the potential for serious public safety consequences[,]" are "factors [which] weigh against granting the motion." Majority opinion at 349, 235 P.3d at 345. This court has never held that the fact that a charge is a felony should disqualify or "weigh" against granting a de minimis motion. That proposition clashes with the express language of HRS § 702–236. Indeed, as noted before, in

---

**19.** The majority cites *State v. Park*, 55 Haw. 610, 525 P.2d 586 (1974), for the proposition that the court must consider the surrounding circumstances. Majority opinion at 343–44, 235 P.3d at 339–40. In *Park*, the defendants were primary election candidates charged with failing to file a statement of expenses. The district court dismissed the charges as to some defendants who had filed statements after the deadline but before prosecution, based on its conclusion that such infractions were de minimis. *Id.* at 613, 525 P.2d at 589. In *Park*, this court highlighted several factors which this court found the court failed to consider under the facts of that case. This court noted that "the district court did not consider the merits of this issue on an individual basis." *Id.* at 616, 525 P.2d at 591. This court further observed that "[t]he record in each case is utterly bare of the attendant circumstances surrounding [the] violation." *Id.* at 617, 525

P.2d at 592. Hence this court held that the court's dismissal was an abuse of discretion. *Id.*

However, in the instant case, the court did "consider the merits of [petitioner's motion] on an individual basis." *Id.* at 616, 525 P.2d at 591. Furthermore, unlike *Park*, the record is not "utterly bare of the attendant circumstances surrounding [the] violation." *Id.* at 617, 525 P.2d at 592. To the contrary, the court specified several circumstances surrounding the violation, including the fact that no gun, weapons, or other means of firing the bullet was found in Petitioner's possession or control. Finding 7. Additionally, Petitioner was arrested for a traffic violation and the use of firearms or ammunition was not a factor leading to Petitioner's arrest. Finding 3 and Conclusion 1.

**20.** See *supra* note 7 regarding bullet jewelry.

*Viernes* this court found the defendant's possession of a controlled substance to be de minimis notwithstanding the fact that any possession constituted a class C felony. 92 Hawai'i at 134, 988 P.2d at 199. HRS § 702–236 requires only that the court consider the nature of the defendant's conduct and all of the attendant circumstances in deciding whether to dismiss a charge as de minimis. To instruct a court on remand that certain other factors "weigh against granting the motion[,]" as the majority does, again, usurps the discretion expressly afforded the court by HRS § 702–236 and our case law.

The majority also notes that "this court and the ICA have considered the seriousness of the alleged conduct in determining whether the trial court abused its discretion in ruling on a motion[.]" Majority opinion at 348, 235 P.3d at 344. The majority first points to *State v. Schofill*, 63 Haw. 77, 621 P.2d 364 (1980). In that case, the defendant agreed to sell an undercover officer a quarter ounce of cocaine in exchange for $550. *Id.* at 79, 621 P.2d at 367. The defendant was charged with promoting a dangerous drug in the first degree. *Id.* at 78, 621 P.2d at 366. The trial court dismissed the indictment based in part on its conclusion that the alleged offense was a de minimis infraction under HRS § 702–236. *Id.* This court reversed the trial court, stating that "[t]raffic in narcotics can hardly be said to be a de minimis offense." *Id.* at 83, 621 P.2d at 370.

While *Schofill* rejected the argument that drug trafficking constituted a de minimis offense, this court has held that the possession of narcotics can be de minimis under certain circumstances. *Viernes*, 92 Hawai'i at 130, 988 P.2d at 195. The distinction is obvious. As previously stated, possession crimes are most often a means of preventing some other harm or evil. Thus, there inevitably will be certain circumstances where one's possession may not necessarily implicate the harm which the legislature intended to prevent. In those instances, when a court determines that one's possession did "not actually cause or threaten the harm or evil sought to be prevented ... or did so only to an extent too trivial to warrant the condemnation of conviction[,]" the court has discretion to dismiss

that charge as de minimis. HRS § 702–236. In this case, the court determined that Petitioner's possession of the single bullet did not actually cause or threaten the harm sought to be prevented by the law. Based on the circumstances in this case, it was within the court's discretion to do so.

The majority also cites *State v. Johnson*, 3 Haw.App. 472, 475, 653 P.2d 428, 431 (1982), for the same proposition. *See* majority opinion at 349, 235 P.3d at 345. In that case, after drinking one or two beers, the defendant crossed the centerline of a highway, struck an oncoming car, and caused the death of the passenger therein. *Id.* at 474–75, 653 P.2d at 431. The defendant was charged with negligent homicide in the first degree. *Id.* at 473, 653 P.2d at 430. After trial, the defendant was convicted of negligent homicide in the second degree which stated in relevant part that "[a] person is guilty of the offense of negligent homicide in the second degree if he causes the death of another person by the operation of a vehicle in a manner which is simple negligence." *Id.* (quoting HRS § 707–704 (1976)).

On appeal, the defendant argued, *inter alia*, that the trial court erred when it denied his motion for acquittal on the ground that his conduct constituted a de minimis offense under HRS § 702–236. *Id.* at 484, 653 P.2d at 436–37. The ICA affirmed the trial court stating that, "where a death results from one's negligence, we deem it an assault on good sense to argue that the violator's actions were de minimis." *Id.* Obviously, the instant case is not one in which Petitioner's actions caused a death. HRS § 134–7(b) prohibits possession of firearms or ammunition by certain persons as a means of preventing crimes involving firearms. The instant case did not involve death, but also under the attendant circumstances, Petitioner's conduct did not threaten the risk of death. In that regard, *Johnson* is clearly inapplicable.

## VI.

Finally, while the majority repeatedly emphasizes that "[i]nsofar as the defendant advances a motion to dismiss on de minimis grounds, it is the defendant, and not the

prosecution, who bears the burden of proof on that issue[,]" majority opinion at 338, 344, 235 P.3d at 334, 340 (emphases omitted), the majority fails to take into consideration that, as noted before, once the court makes a decision to dismiss a prosecution as de minimis, "the burden of establishing abuse of discretion *is on appellant, and a strong showing is required to establish it." Hinton,* 120 Hawai'i at 273, 204 P.3d at 492 (emphasis added). Accordingly, while Petitioner had the burden of establishing her conduct was de minimis in support of her motion to dismiss, once the court granted Petitioner's motion, Respondent bore the burden of establishing that the court abused its discretion by "a strong showing." *Id.*

As recounted, on appeal, Respondent challenged (1) conclusion 1, arguing that "it is also an important purpose of HRS § 134–7(b) to protect law enforcement officers, correctional officers, jail staff, and detainees from criminal activity involving the use of firearms and ammunition with the assistance of felons convicted of certain crimes[,]" (emphasis omitted), (2) conclusion 4, insofar as the court found that the single bullet could not be used to harm anyone, (3) finding 5, that a single "bullet" was found in Petitioner's brassiere, and finding 6, that Petitioner's explanation for possessing the "bullet" was that she was going to have it made into a charm for a bracelet, but only insofar as the court characterized the item found in Petitioner's possession as a "bullet" as opposed to a "bullet cartridge or round" or as "ammunition," and (4) conclusion 6, that Petitioner met her burden of showing that the de minimis statute applies, because the fact that the bullet was "capable of being fired, considered with all of the other attendant circumstances," shows that "[Petitioner's] conduct was causing or threatening the harm or evil sought to be prevented."

As to challenge (1), as stated, the specific focus raised by Respondent is not specifically or expressly noted in HRS § 134–7(b) or its legislative history, but is nevertheless subsumed under the broader purpose of HRS § 134–7(b) of protecting the public. As to challenge (2), the court determined that Petitioner lacked the means of firing or discharg-

ing the bullet because no gun, weapon, or other means of firing the bullet was found in her possession or control. Therefore, the court concluded that Petitioner's possession of the single bullet could not be used to harm anyone. The court's finding was based on the attendant circumstances of *this case* as opposed to speculation or theories regarding the possible ways in which any bullet *could have* been used. As to challenge (3), the ICA adequately resolved that issue, finding that the term "bullet" was sufficient to satisfy the meaning of ammunition under § 134–7(b). To reiterate, as to challenge (4), the court looked at the attendant circumstances at the time Petitioner was found in possession of the bullet, not hypothetical or speculative theories regarding the ways in which a bullet is "capable of being fired." Additionally, the findings and conclusions support the court's conclusion 6 in this case. *See supra.* Therefore, it was not an abuse of discretion on the court's part to base its review on the attendant circumstances of the instant case.

In light of the foregoing, it is apparent that Respondent failed to carry *its* burden of making the "strong showing" required to establish an abuse of discretion. *Hinton,* 120 Hawai'i at 273, 204 P.3d at 492. The term "strong" means, *inter alia,* "having particular quality in great degree," "compelling," and "well established." *Webster's Third New Int'l Dictionary* 2265 (1966). With the ICA having resolved Respondent's challenges as to findings 5 and 6, Respondent's remaining challenges were to (a) the court's finding that the bullet could not be used to harm anyone and (b) the court's conclusion that Petitioner met her burden of establishing that the de minimis statute applies.

In its Opening Brief, Respondent supported challenge (a) by noting that it brought to the attention of the court that "it was possible that the bullet in question *could have* been fired from a 'home made device.'" (Emphasis added.) Respondent states that "[a]mong the many *possible scenarios* that could threaten harm in these circumstances is the *possibility* that [Petitioner] or another detainee ... could have ... constructed a 'home made' firearm to harm or threaten to harm officers or other detainees." (Emphas-

es added.) Respondent further states that "assuming *arguendo* that it was impossible to construct such a 'home made' firearm, there is still the *possibility* that the ammunition could have been exploded in a more uncontrolled fashion by striking the primer with something hard or by heating the ammunition until the gunpowder combusted." (Emphasis added.)

Respondent's burden of "strong showing" would seemingly require Respondent to point to something beyond mere speculation and unsupported theories to overcome the court's determination that the bullet could not be used to actually cause the harm under the statute, inasmuch as no gun, weapon, or other means of firing the bullet were found in Petitioner's possession or control. In light of the actual attendant circumstances, Respondent's arguments are neither "compelling," "well established," nor of "particular quality in great degree." *Webster's Third New Int'l Dictionary* at 2265. Such arguments do not "strongly" show that the court's determination that at the time Petitioner was arrested, the bullet could not be used to harm anyone, was a clear abuse of its discretion.

In support of challenge (b), Respondent argues that (i) "[Petitioner] failed to produce any evidence to rebut [Respondent's] representation that the ammunition was operable and had in fact been test fired"; (ii) Petitioner failed to "present evidence that the ammunition would inevitably have been detected by the HPD matron and taken from [Petitioner] before she was placed in custody"; (iii) Petitioner failed to "present evidence that it was *impossible or even unlikely* that the ammunition *could have* been used as an explosive device by [Petitioner] or anyone who *might* have gained possession of the ammunition from Petitioner" (emphases added); and (iv) there was no "determination of credibility with regard to [Petitioner's] explanation 'that she was going to have [the ammunition] made into a charm for a bracelet.'" (brackets in original). As to argument (i), Petitioner did not dispute that the bullet was operable. The relevant question is whether possession of that "operable" bullet actually caused or threatened that harm sought to be prevented by HRS § 134–7(b). As to arguments (ii)

and (iii), Respondent in effect contends that Petitioner must present evidence to disprove every hypothetical and speculative theory regarding how the bullet *could have* been used to cause the harm sought to be prevented by HRS § 134–7(b).

The majority focuses on Respondent's argument (iv) in support of its argument that Petitioner failed to carry her burden of demonstrating that her possession of a bullet was too trivial to warrant conviction. *See* majority opinion at 345–46, 235 P.3d at 341–42. However, as noted, Respondent failed to raise this issue in its memorandum in opposition to Petitioner's motion to dismiss, nor at the hearing on the motion. Therefore, Respondent's argument should not be considered on appeal. *See Moses*, 102 Hawai'i at 456, 77 P.3d at 947; *Hoglund*, 71 Haw. at 150, 785 P.2d at 1313; *Rodrigues*, 67 Haw. at 498, 692 P.2d at 1158. Even if the credibility of Petitioner's explanation could be properly challenged on appeal, such argument would not amount to a strong showing that the court abused its discretion. As stated before, the court based its dismissal on the circumstances as a whole. Respondent has failed to demonstrate that as a whole those circumstances were either improperly considered or failed to support the decision of the court.

As stated, Respondent bore the burden of establishing that the court's decision amounted to a clear abuse of discretion. *See supra.* Respondent failed to address the court's reliance on the fact that the use of firearms or ammunition was not a relevant factor in leading to Petitioner's arrest, and the fact that Petitioner's prior convictions did not include crimes of violence. Rather, Respondent focused on "home made" devices never found to be within Petitioner's possession or control, and purely speculative theories regarding the conceivable ways in which the bullet *could have* been used to cause harm. Additionally, on appeal, Respondent improperly questioned Petitioner's explanation for possessing the bullet. Under these circumstances, Respondent failed on appeal to carry its burden of proving an abuse of discretion, and to make the "strong showing" required to establish it.

The majority asserts that even if a "strong showing" is required, the court was required to consider all of the relevant attendant circumstances and its "failure to consider those circumstances, the consideration of which is required by HRS § 702–236, means that [the court] has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Majority opinion at 347, 235 P.3d at 343 (internal quotation marks and citation omitted). The majority further asserts that "[w]here the issue is whether a trial court applied incorrect legal principles in exercising its discretion, [this court] freely review[s] the court's decision to determine whether the law was correctly applied." *Id.* (citations omitted).

First, Respondent never argued that the court failed to consider all of the relevant attendant circumstances, much less, that such failure "means that [the court] has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.* (internal quotation marks and citation omitted).

Second, while the majority insists that the court failed to consider the attendant circumstances, the majority does not point out what, in addition to what was considered by the court, Petitioner should have presented. The majority asserts only that Petitioner failed to explain why she had the bullet on her at the time she was arrested, or why it was concealed in her brassiere, or where she obtained the bullet and where she was traveling from and going to at the time she was stopped. Majority opinion at 345, 235 P.3d at 341. As noted before, these matters are patently remote from the relevant "attendant circumstances" and lack even a hint of any relevance or materiality based on the facts of the instant case. Thus these items do not support a conclusion that the court failed to consider the attendant circumstances, much less, abused its discretion.

Third, the majority alters the abuse of discretion standard of review applicable in de minimis cases. That standard of review does not allow a court of appeals to "freely review the court's decision" where there is an issue of "whether [the] trial court applied incorrect legal principles in exercising its discretion[.]"

*Id.* at 347, 235 P.3d at 343. The standard of review in de minimis cases is clear and well established. A court of appeals must determine whether the court abused its discretion by "clearly exceed[ing] the bounds of reason or disregard[ing] rules or principles of law or practice to a substantial detriment of a party litigant[,]" *Hironaka,* 99 Hawai'i at 204, 53 P.3d at 812; *Viernes,* 92 Hawai'i at 133, 988 P.2d at 198, and "the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it[,]" *Hinton,* 120 Hawai'i at 273, 204 P.3d at 492.

## VII.

While one may not necessarily agree with the ultimate dismissal of the charge in Count I, it cannot be concluded that the court exceeded the bounds of reason or violated principles of law or practice in a manner that was clearly improper. Thus, as an appellate court with limited review, we are bound to uphold that dismissal. In holding otherwise, the majority manifestly usurps the office of the court.

For these reasons, I respectfully dissent.